[Civ. No. 4075.   Third Appellate District.—June 19, 1930.]

C. M. HALL, Appellant, v. G. W. HOLSTROM et al., Respondents.

Estudillo & Schwinn for Appellant.

A. Herber Winder for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment denying injunctive relief from an alleged infringement of a trade name and design called "The White Spot." This name, together with the design of a white spot over a black background, was registered and used by the plaintiff to designate his ownership of three restaurants which he maintained in Los Angeles.

From and after June, 1924, the plaintiff established and thereafter operated his first restaurant on Wilshire Boulevard in Los Angeles. The second one was opened in March, 1927, on Beverly Boulevard. The third one was instituted in August of the same year and was also located on the last-mentioned boulevard. The business prospered. In 1928 the aggregate income from these restaurants was $495,000. In 1924, before the defendant owned or operated a restaurant, the plaintiff recorded with the Secretary of State of California, pursuant to section 3197 of the Political Code, as a trade name and mark, the words "The White Spot," together with the design of a circular white spot, to be used in connection with and as a sign to designate the ownership of his said restaurant business. On April 6,

1927, he again recorded with the Secretary of State, pursuant to law, a similar trademark to be used in connection with his said restaurant business, being the same words "The White Spot," together with the design of a white spot on a black background.

December 15, 1925, the defendant established for the first time and thereafter maintained a restaurant at Riverside, in a building, which building since August, 1923, was called "The White Spot of Riverside." This restaurant he named and advertised as "The White Spot" and also adopted and used, in connection with his restaurant, a design of a white spot similar to the sign which had been previously registered and was employed by the plaintiff to advertise his restaurant business of the same character. On March 10, 1927, the defendant and his wife filed with the county clerk of Riverside County articles of copartnership under the fictitious name of "White Spot Cafe." The court found that the "marketability of plaintiff's business" was "greatly injured and damaged" by the defendant's use of the name "The White Spot," together with his use of the design of a white spot as a sign. But the court further found that the "standing and reputation" of the plaintiff's business had not been injured. It was also found that the defendant adopted the name and design of "The White Spot" at the time his restaurant was first opened in December, 1925, as the result of a prize contest in the suggestion of an appropriate name for a restaurant; that he then had no knowledge of the plaintiff's use or registration of that name and design; that the defendant first learned of the plaintiff's use of this trade term in the "early part of the year 1927"; that the defendant has expended a large sum of money in advertising his restaurant as "The White Spot" and in establishing the goodwill of his business under that name; that he will suffer great loss if he is required to cease using the trade name and design; that the plaintiff's original business enterprise was merely a lunch-counter and not a restaurant, and that "no competition exists between the business of plaintiff and that of defendant." Thereupon judgment was rendered denying the plaintiff injunctive relief. From this judgment the appeal was perfected.

The appellant contends that the findings do not support the judgment for the reason that his uncontradicted prior appropriation, use and registration of the trade name and design as determined by the court entitles him to the exclusive use of the same and to an injunction prohibiting defendant from infringing thereon and that the court's finding that "the marketability of plaintiff's business is being injured and damaged by reason of defendant's use of the name 'The White Spot,' '' is in irreconcilable conflict with the further finding that "no competition exists between the business of plaintiff and that of defendant."

On the contrary the respondent asserts that, (1) the name "The White Spot" as applied to a place of business is not subject to registration, (2) there is no infringement since the character of plaintiff's lunch counter and defendant's restaurant business are entirely different, (3) the plaintiff is barred by laches from his asserted remedy, (4) the plaintiff failed to assert that his business was damaged by the alleged infringement, but upon the contrary merely claimed that "the *standing* and *reputation* of plaintiff's business" was injured and damaged by defendant's use of the trade name and design.

There is a clear distinction between unfair competition in similar businesses and an infringement upon an appropriated and registered trade name and design. The former may be included within the latter, but the latter may exist independently of the former. The court found that the plaintiff duly recorded the trade name and design in controversy pursuant to section 3197 of the Political Code prior to the defendant's establishment of his restaurant or use of the name or design.

The statute does authorize one to appropriate to his exclusive use and register a trademark, name, symbol or design to designate the ownership of a business as well as a brand of merchandise, device or thing. Section 991 of the Civil Code provides:

"One who produces or deals in a particular thing, *or conducts a particular business,* may appropriate to his exclusive use, as a trade-mark, any form, symbol or name which has not been so appropriated by another, to designate the origin or ownership thereof; but he cannot exclu-

sively appropriate any designation, or part of a designation, which relates only to the name, quality, or the description of the thing or business, or the place where the thing is produced, or the business is carried on.''

The fact that the name ''The White Spot'' and the design of a white spot on a black background or otherwise is purely artificial and fanciful and not merely descriptive of the quality, location or thing, is not controverted. The court found that ''said words and design are purely and entirely fanciful and artificial, and in no way descriptive of either the nature, kind or location of either of said businesses of plaintiff or defendant.'' We are therefore of the opinion that both the name and design are legally susceptible of registration and protection as a trade name and design.

A trademark or design used as a sign is property and is therefore susceptible of private ownership. (Sec. 655, Civ. Code.) The possession of a trademark, design or sign entitles the owner thereof to its use to the exclusion of others. (Sec. 654, Civ. Code.) While it is true that the definition of a trademark as that term is used in section 3196 of the Political Code does not include a name which designates the ownership of a business, clearly the exclusive use of such a trade name of a business or enterprise may be reserved to the owner by registration as provided by section 3197 of the Political Code, which declares that ''any person may record any trademark or *name* by filing with the Secretary of State his claim to the same. . . . ''

Moreover, the last-mentioned section must be read and construed with section 991 of the Civil Code, which specifically authorizes one to ''appropriate to his exclusive use as a trade-mark, any form, symbol, or *name* . . . to designate the origin or ownership thereof.'' Section 4480 of the Political Code provides: ''With relation to each other, the provisions of the four codes must be construed . . . as though all such codes had been passed at the same moment of time, and were parts of the same statute.'' It would be unreasonable to hold that a fictitious or fanciful name, symbol or design, not otherwise objectionable, could be appropriated and registered by the owner as a trademark to identify merchandise or other objects, but that the same protection would not be afforded the

owner of a business to protect the name or design of a proper sign under which he operates. (*Woodward* v. *Lazar*, 21 Cal. 448 [82 Am. Dec. 751]; 26 R. C. L. 860, sec. 38.) The benefits of an exclusive trademark are to create and preserve a favorable reputation, to stimulate the sale of a particular article and to distinguish it from similar competing products. (*Sun-Maid Raisin Growers* v. *Mosesian*, 84 Cal. App. 485, 494 [259 Pac. 630].)

██ It may be added that it is the purpose of the law to protect by registration or injunction the exclusive use of a name, symbol or sign of the ownership of a particular business to preserve and increase the value, patronage and goodwill of the enterprise. ██ A trademark, name or sign of a particular business of an owner thereof is auxiliary to and an inseparable part of the goodwill of its possessor. (Nims on Trade-Marks, p. 505, sec. 188.) ██ The appropriation of the exclusive use and registration of a suitable name, sign, design or symbol indicating the ownership of a business, although it may be operated in various units and in remotely separated cities or localities, may not be questioned. Thus it is not open to controversy that the registration or exclusive appropriation of such terms as "Piggly-Wiggly," "Cash and Carry," "Anna-May Tea Room," "Pig'n Whistle," "Silver Slipper Cafe," "Blue Bird Cafeteria," "Tait's Tavern," "Hudson Bay Fur Co.," and "Philadelphia Shoe Co.," as an indication of the owner's place of business, will be protected by equity. This is true, although the owners may operate a chain of similarly named restaurants or stores at various and remote places. (24 Cal. Jur. 624, sec. 12; *Benioff* v. *Benioff*, 64 Cal. App. 745 [222 Pac. 835].) With respect to the protection of a trademark or name, section 3199 of the Political Code provides that:

"Any person who has first adopted and used a trade-mark or name, *whether within or beyond the limits of this state,* is its original owner. Such ownership may be transferred in the same manner as personal property, and is entitled to the same protection by suits at law."

██ There is, therefore, no reason why the name or design of "The White Spot," as the same was used and duly registered to designate the plaintiff's ownership of his several restaurants, may not be protected from in-

fringement by injunctive relief, even though a similar business is operated by the defendant under the same name and design at Riverside which is forty miles distant from the city of Los Angeles where plaintiff's restaurants are located.

There is no merit in respondent's contention that equity will afford no relief because plaintiff's original place of business was a lunch counter rather than a restaurant. Both are operated for the purpose of preparing and selling food to satisfy hunger. The respective names indicate only a difference in the magnitude of the business rather than a distinction in the character thereof. Moreover, plaintiff's business increased until his income from that source amounted to $495,000 in the year 1928, while the defendant received but $84,000 from his restaurant during the same year.

The plaintiff's remedy against infringement of his registered trade name is not barred by laches. Only about a year elapsed from his discovery of defendant's use of the name until he formally demanded a cessation thereof. The court found that the plaintiff first learned of defendant's use of the trade term ''in the early part of 1927.'' It was March 10, 1927, when the defendant and his wife filed their certificate of copartnership under the name ''White Spot Cafe.'' June 21, 1928, demand was made on the defendant to cease using the name and design. October 23d of the same year the suit was commenced. The trial court did not find that the plaintiff was guilty of laches. We are of the opinion that this delay under the circumstances did not constitute laches, and that the doctrine of laches is not ordinarily a defense to an application for injunction to restrain an infringement on the use of a duly registered and privately owned trade mark or name. Where the public has not been misled or deceived to its damage by the delay in instituting an action for infringement against the use of a trademark or design, mere laches will not furnish a defense. In Hopkins on Trade-Marks, fourth edition, page 206, section 89, it is said:

''By the recent decision of the Supreme Court in the case of *McLean* v. *Fleming*, 96 U. S. 245 [24 L. Ed. 828],

it was held that acquiescence of long standing was no bar to an injunction'' for infringement of a trademark.

So, also, in 38 Cyc., p. 881, it is said:

''In suits for unfair competition or infringement it is well settled that mere laches in the sense of delay to bring suit does not constitute a defense. Such laches may, under some circumstances, bar an accounting for past profits, but under no circumstances will it bar an injunction against a further continuance of the wrong. Laches or delay must be accompanied by circumstances amounting to an abandonment or an estoppel before it constitutes any defense. Mere delay and silence, although with knowledge of infringement, does not amount to consent and is no bar to relief against a continuance of the infringement.'' (*Nolan Bros. Shoe Co.* v. *Nolan,* 131 Cal. 271 [82 Am. St. Rep. 346, 53 L. R. A. 384, 63 Pac. 480]; Nims on Trade-Marks, p. 1025, sec. 413.)

The allegation of the complaint ''That the standing and reputation of plaintiff's business has been and now is greatly injured and damaged by reason of the use by said defendant of the said name 'The White Spot' '' is sufficient, in the absence of a demurrer, to support evidence of circumstances tending to show injury such as will warrant the issuing of an injunction to prevent a continuing infringement of a registered trade mark or name. It is claimed the foregoing allegation will not support evidence of injury or damage *to the business* of the plaintiff. Actual damages were not sought by the plaintiff in this action. Moreover, the ''standing and reputation'' of a business is a vital part of the goodwill of the business. In Nims on Trade-Marks, p. 506, sec. 188, it is said:

''The trade-mark is the expression, the symbol, of part or all of the good-will of the business using the mark. Separate from the good-will of the business it identifies, a trade-mark is useless, valueless.''

It follows that injury to the ''standing and reputation'' of the business, becomes an injury to the goodwill of the business. Infringement upon a trademark which results in injury to the goodwill of the business may be enjoined. In this case the court found that ''the marketability of plaintiff's business is being injured and damaged by reason of defendant's use of the name 'The White Spot,' and the design of a circular white spot.'' That

which affects the marketability of a business affects the goodwill and value of the business itself. ■ Moreover, for the purpose of restraining infringement of a trademark, proof of the actual sustaining of damages is unnecessary. In Hopkins on Trade-Marks, page 448, it is said:

"Proof of injury is unnecessary if the evidence establish the fact that injury will result unless such use . . . will be restrained. The infringement of a trade-mark implies injury."

In the case of *Lanahan* v. *John Kissel & Son,* 135 Fed. 899, 903, the court says:

"The object of injunctive relief is to prevent injury, threatened and probable to result, unless interrupted. Why should a person be required to stand by and see his property impaired, before he may stay the hand of the person seeking to offend? Actual injury may be the best evidence of its own existence, but a person should not be compelled to abide the results of trespass for the purpose of obtaining evidence of its injurious effects. Wrongs which are the probable result of given means should be prevented, not awaited. The infringement of the trade-mark implies injury."

In 26 R. C. L. 897, section 75, it is said:

"Relief by way of injunction will be granted against the unauthorized use of the plaintiff's name in business although there is no allegation that he has been damaged thereby." (*Bagley* v. *Rivers,* 87 Md. 400 [67 Am. St. Rep. 357, 40 L. R. A. 632, 40 Atl. 171].)

■ The question of actual knowledge on the part of the defendant of plaintiff's prior appropriation and use of the trade name and design is immaterial. The registration of the trade name according to law is constructive notice of the appropriation thereof. In 24 Cal. Jur. 626, section 15, it is said:

"One who has obtained the exclusive right to a trademark is entitled to restrain an infringement, whatever the motive or intent of the infringer, the relief being granted, not on the ground of fraud, but because a right of property—i. e., plaintiff's exclusive right to the use of his trademark—has been invaded." (*Italian Swiss Colony* v. *Italian Vineyard Co.,* 158 Cal. 252 [32 L. R. A. (N. S.)

439, 110 Pac. 913] ; *United Security etc. Co.* v. *Superior Court,* 205 Cal. 167 [270 Pac. 184].)

In the case of *Banzhaf* v. *Chase,* 150 Cal. 180 [88 Pac. 704], the court held that one using the trademark of another to his injury, will be restrained even though he be entirely ignorant of the owner's prior use thereof and regardless of the motive or intent with which it is employed. In *Sun-Maid Raisin Growers* v. *Mosesian,* 84 Cal. App. 485, 497 [258 Pac. 630, 635], it is said:

"The authorities are fairly uniform to the effect that it is not necessary to prove actual fraud or deception, but this may be assumed where the facts indicate that a purchaser [or customer], exercising ordinary care, would be likely to be deceived by the imitation of a trademark."

The case of *Dunston* v. *Los Angeles Van & Storage Co.,* 165 Cal. 89 [131 Pac. 115], upon which the respondent relies, with respect to the necessity of proving fraud, was determined upon the ground that the name "Los Angeles Van & Storage Company," the infringement of which was there involved, was not susceptible of exclusive appropriation or registration for the reason that "it has reference in its first words to the place of business, and in the remaining words to a description of the business."

The fact that the defendant in this case owned a building at Riverside prior to the registration of the trade name and design of the plaintiff, which building was known as "The White Spot of Riverside," furnishes no valid reason why an injunction should not issue in the present case. The name of the defendant's building was not associated with the restaurant business. The defendant then had no restaurant. The name also referred to the place where the business was carried on. That name was, therefore, not subject to registration under the provisions of section 991 of the Civil Code as that section was construed in the Dunston case, *supra.* Moreover, the defendant abandoned that name and subsequently sought to carry on his restaurant in the same building under the exact name of "The White Spot," with a similar white spot design as a sign, which had been previously appropriated and registered by the plaintiff.

We are satisfied the court erred in refusing to enjoin the defendant from infringing on the use of plaintiff's

prior appropriation and registration of his said trade name and design. The findings of the court are adequate and under the law, as we view it, they seem to require a reversal of the judgment.

The judgment is accordingly reversed and the court is directed to enter a judgment enjoining the defendant from infringing on the plaintiff's exclusive right to the use of his said trade name and design.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 18, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 18, 1930.