[Civ. No. 10303. Third Dist. May 8, 1962.]

DON ALVARADO COMPANY, Plaintiff and Appellant, v. PAUL PORGANAN, Defendant and Respondent.

William G. MacKay and Wilkie C. Courter for Plaintiff and Appellant.

Mazzera, Snyder & DeMartini and Robert A. Haughwourt for Defendant and Respondent.

PIERCE, J.—Plaintiff sues to enjoin defendant from an alleged trademark infringement and unfair competition. The trial court found neither. Plaintiff appeals from the judgment for defendant.

Since 1955 plaintiff has marketed carrots in polyethylene bags. Near the top of each bag is a 4-inch wide design of green leaves or stalks simulating carrot tops. Below that is 5½ inches of "simulated mesh" or cross-hatched orange lines, approximately one-fourth inch apart. Both the simulated carrot tops and the simulated mesh are printed upon the surface of the bag. At the bottom of the bag there is a one-inch green border. On the front of the bag, superimposed upon the mesh design is appellant's tradename "DECOTO" in one-inch black letters with orange shading and enclosed in a transparent oblong. Below this appear the words "Minimum

net wt. 1 lb.'' in green letters. Also in green letters, but enclosed in a transparent circle outlined in a narrow orange line, is the word ''Fresh.'' Superimposed on the green border at the bottom of the bags is a black rectangle upon which plaintiff's name and address appear in orange letters. Excepting for the colored printed matter on the bag, the background is the natural, uncolored, pellucid surface of the polyethylene bag. Another bag used by plaintiff is identical, excepting that red is substituted for orange. In 1959, four years after adopting the bags, plaintiff registered the pattern with his tradename thereon as a trademark with the United States Patent Office. In 1959 plaintiff did a gross business in packaged carrots of $836,314. It purchases approximately 11,000,000 of the bags in question per year.

Defendant's gross carrot business is also substantial. *He commenced the use of polyethylene bags before plaintiff.* Defendant has been using them since 1953. In that year his bags contained a 3-inch deep design of green leaves or stalks at the top and a 1½ inch green border at the bottom with defendant's name and address in white letters. Between the top and bottom just described, however, there was no crosshatching and the background on some of defendant's bags, although transparent, like plaintiff's later adopted bag, were tinted pink. Others were untinted. Superimposed on this is the profile of a woman's head and above this the caption ''LATHROP BEAUTY'' in large green letters and below the woman's profile is the word ''carrots'' also in large letters, and ''net wt. 1 lb.'' Thus we have defendant in the carrot market with a bag design quite similar to plaintiff's (except for the lettering)—*two years before plaintiff's present bag was adopted.*

In 1956 or 1957 Chase Bag Company solicited defendant's business for polyethylene bags and showed him samples then in common use. These were said to be similar to defendant's Exhibits E and F in evidence. These exhibits include simulated carrot tops in green or blue color, simulated mesh in orange or red, and a combination. Horizontal green bases are a feature of most of them.[1] The testimony of defendant's witnesses was that simulated carrot tops and simulated meshes had been in common use from the early 1950's, that one bag manufacturer had used them in combination since 1952 or

---

[1]The brand names appearing on these are: Wesco (West Coast Produce Co.); Regalo Brand, Top Sail, Winter Garden, Sunny Sally.

1953 and had sold millions of them. Defendant finally se-
lected three types: One with a simulated diamond mesh, one
with a simulated mesh with circles (both of these with green
simulated carrot tops); also a third bag without the carrot
tops but with all other features. The tradename and trade-
mark symbol remained as before. Use of the bags was com-
menced that year (1956 or 1957). Plaintiff registered its
trademark in 1959; then objected to all three bags in use by
defendant and commenced this action in the same year.

Defendant had seen the plaintiff's bag above described
before he made his new bag purchase and had thought it was
a good design. He also testified, however, that others were
then using a bag with the same features and mentioned
Merritt Packing Company, Hitchcock, Joe Maggio and Jim
Mapes. He denied that he selected the new bags to imitate
plaintiff's bag. Defendant's witness, Mr. Farnham, confirmed
that he had urged defendant to purchase the bags with simu-
lated mesh and simulated carrot tops and stated that at the
time he had never heard of Don Alvarado or the bag it was
using.

Defendant's business has increased since he adopted the new
bags, which plaintiff argues as proof that defendant has
profited by deception. Defendant, however, argues that his
business is growing because he consistently undersells plain-
tiff. · This he is able to do, he says, because he grows and
markets his own carrots. Plaintiff is not a grower. Defendant
also contends that he has superior equipment. The trial court
found against any fraud on the part of defendant. Substan-
tial evidence supports this finding.

It is particularly noteworthy here that the bag in use by
defendant in 1953, two years before plaintiff adopted its
present bag, is almost identical with the bags which it is using
now (excepting that defendant substituted cross-hatching (or
the circle-mesh) for the pink-tinted bag). The green simulated
carrot tops are identical.

Mr. Rushton, plaintiff's president, explained adoption of
the simulated carrot tops as follows: "Now, we adopted this
bag design because at the time we started, the bunched
carrots were still a predominant factor in the market and
we wanted to convey the idea there was some association with
leaf that the consumer was generally familiar with and looking
for . . . so we made a bag design that would convey at least
by suggestion, that while these carrots have been separated

from their tops . . . [they] haven't been very far removed from it."

As we have seen, there was no novelty in plaintiff's bag as regards the green simulated carrot tops. Neither was there any novelty in the simulated mesh. The bag companies had commenced the use of both from 1950-1952 and they were a part of their stock plates. The simulated mesh was adopted because, prior to the use of polyethylene bags, other produce, e.g., onions, had been sold in *actual* mesh bags.

A discussion of the contentions of the parties and the law applicable to the foregoing facts should start with the emphasis of three pertinent facts:

(1) The container involved here is a transparent, polyethylene or thermo plastic bag which when it is filled with the intended product, to wit, carrots, show those carrots as through a window, the product becoming thereby a predominant factor in *tout ensemble.*

(2) The tradenames and marks of the two parties are the most prominent and conspicuous printed matter on the respective bags. *This printed matter is completely dissimilar.*

(3) Neither the simulated mesh nor the simulated carrot tops, separately or in combination, is a feature exclusive to plaintiff or as to which he can claim original use. Defendant had used the simulated carrot tops before plaintiff. Others had used them in combination with the simulated mesh before either plaintiff or defendant.

Plaintiff objects vigorously, however, to any comparison of the two bags by considering the elements thereof separately and contends that when viewed *in ensemble* their similarity is such that the carrot-buying public will be confused and that defendant, therefore, should be enjoined.

We will consider this contention with a background of the following well-established rules.

■ It is stated in 1 Nims, Unfair Competition and Trade-Marks (4th ed.), page 667: "Trade-mark infringement has been briefly and simply defined by Vice-Chancellor Wood [in *McAndrews* v. *Bassett*, 10 Jur. (N.S.) 550] as imitation 'for the purpose of passing off in the market other articles of a similar description.' "

■ The same author states (*idem* p. 30) quoting Judge Learned Hand (in *Yale Electric Corp.* v. *Robertson,* 26 F.2d 972, 973): " 'The law of unfair trade comes down very nearly to this—as judges have repeated again and again—that one merchant shall not divert customers from another by repre-

senting what he sells as emanating from the second. This has been, and perhaps even more now is, the whole Law and the Prophets on the subject, *though it assumes many guises.' "*

Both unfair competition and trademark infringement are covered by California code sections. Civil Code, section 3369, subdivision 3, defines unfair competition to mean "unfair or fraudulent business practice and unfair, untrue or misleading advertising. . . ." A person may appropriate a trademark to his exclusive use, to designate the origin of the thing which he produces or in which he deals. (Bus. & Prof. Code, § 14202.) A definition of "trade-mark" easily broad enough to cover the designations and labels here involved is included in Business and Professions Code, section 14229. The first to adopt and use a trademark is declared to be its original owner. (Bus. & Prof. Code, § 14270.) Both codes give remedy by injunction for unfair competition and trademark infringement respectively. (Civ. Code, § 3369, subd. 2; Bus. & Prof. Code, § 14300.) Registration of a trademark is prima facie evidence of ownership. (Bus. & Prof. Code, § 14271.)

Trademark infringement receives exhaustive treatment in Restatement of the Law of Torts which states as a primary condition thereof use by one in his business of a designation "confusingly similar" to another's trademark and adds "though he does not use the designation for the purpose of deception." (Rest., Torts, § 717, p. 562; see also *American Distilling Co.* v. *Bellows & Co.,* 102 Cal.App.2d 8 [226 P.2d 751], at p. 25.) The ultimate issue is the likelihood that prospective purchasers will be misled. (Rest., Torts, § 717, com. b, p. 567.)

"The ultimate test, of whether or not there is a confusing similarity, . . . is the effect in the market in which they are used. . . . That a few particularly undiscerning prospective purchasers might be so misled is not enough. On the other hand, it is enough that an appreciable number of purchasers are likely to be so misled, even though by exercising greater discernment they could avoid the error. . . .

"The similarity . . . is not determined by comparing the two in juxtaposition only. Since it is the effect upon prospective purchasers that is important, the conditions under which they act must be considered. Purchasers do not always see the goods in juxtaposition. They rely upon memory and vague impressions." (Rest., Torts, § 729, coms. a and b, p. 591; see also *American Distilling Co.* v. *Bellows & Co., supra,* at

p. 21; but see *American Automobile Assn.* v. *American Automobile Owners Assn.*, 216 Cal. 125 [13 P.2d 707], at p. 138.)

"The prospective purchasers likely to be misled may be any purchasers, whether initial, intermediate, or ultimate in the chain of marketing." (Rest., Torts, § 729, com. d, p. 592.)

Regarding the rule that it is the designation in its ensemble, rather than in its component parts which must be considered, the following statement in the Restatement should be noted: "Similarity of appearance is determined on the basis of the total effect of the designation rather than on a comparison of individual features. While individual features may be dissimilar, the total effect may be one of similarity. . . . The setting in which a designation is used affects its appearance and colors the impression conveyed by it." (Rest., Torts, § 729, com. b, p. 593.)

Plaintiff, as stated above, places original reliance upon the contention that retailers who purchase both plaintiff's and defendant's carrots in bags frequently commingle them in the same bins; and, he states, that so commingled, and, thus considered in their ensemble, they are not only "confusingly similar," but indistinguishable. In support of this contention plaintiff produced a color photograph of such a bin (Plaintiff's Exhibit 9) and confidently asserts that this establishes indistinguishability conclusively. The trial court did not think so. The court in its memorandum opinion first states:

"If a purchaser is. brand conscious it is difficult indeed to conclude that confusion could result in view of the striking dissimilarity as to size, color and form between 'DECOTO' and the brand designation of the defendant. A purchaser of this type in the exercise of even the slightest care would certainly note the difference."

Later in the same opinion the trial court states: "... [G]reat emphasis is placed upon the possibilities for and the likelihood of confusion when the two bags are commingled in one display. Perhaps it may be conceded that this situation . . . creates the best setting for confusion, but even here the discernment exercised by such a purchaser seeking a particular product renders it unlikely that confusion is the result. If it does, such confusion is best explainable on the basis of a failure to exercise any degree of care whatsoever."

Our reaction to plaintiff's exhibit is even stronger in opposition to plaintiff's contention than was the trial court's. Looking at this bin of carrots in transparent bags, the very first thing that catches the eye (after noting they *are* carrots)

is the large-lettered "DECOTO" on the one bag and the even larger brand "LATHROP BEAUTY CARROTS" and the girl's profile on the other. The simulated mesh seems almost entirely effaced by the carrots themselves; the green simulated carrot tops, particularly on the bag of defendant, are practically obscured.

To us the designations of the respective parties here are (to borrow the language of Justice Sturtevant of the First District Court of Appeal as adopted by the Supreme Court in *Scudder Food Products, Inc.* v. *Ginsberg,* 21 Cal.2d 596 [134 P.2d 255], at p. 600), "different and the difference is so pronounced that one who runs may read."

What degree of resemblance makes the trademark likely to mislead or, stating the matter conversely, what degree of dissimilarity renders the defendant's designation innocuous is incapable of exact definition. (*Sun-Maid Raisin Growers* v. *Mosesian,* 84 Cal.App. 485 [258 P. 630], at p. 495; *American Distilling Co.* v. *Bellows & Co., supra,* at p. 22.)

Plaintiff has suggested in its brief that an *"objective"* examination should be made of the colored photograph. But it is impossible to view it, or any picture, objectively in its ensemble for purposes of appraising the similarity or dissimilarity of objects therein. The process is *subjective* by definition. All that can be expected is an *unbiased* viewing. Here four judges have examined these exhibits (the picture as well as the bag samples), reaching the same opinion that there is no confusing similarity likely to mislead a prospective purchaser exercising any reasonable degree of care in selection. As stated in *American Automobile Assn.* v. *American Automobile Owners Assn., supra,* 216 Cal. 125, 132 (quoting from *Lorillard* v. *Peper,* 86 F. 956, 960 [30 C.C.A. 496]) : ". . . We cannot surrender our own judgment in this matter because others may be of a different opinion. . . ."

But even if we were less sure here of the essential dissimilarity of the two bags and their designations, another rule of law would compel judgment for defendant. It has been shown above that the polyethylene bags are now of almost universal use in the common carrot market which the parties share; that the simulated mesh is in common use; that the green simulated carrot tops are also, and that so far as any priorities here are concerned defendant used them before plaintiff; that all of these features have had common usage by others before their adoption by either plaintiff or defendant.

If, contrary to our belief and holding, there is any confusing similarity between the bags of plaintiff and defendant in the ensemble it does not arise from the brand or tradenames or symbols which are admittedly wholly dissimilar. Nor is plaintiff in a position to assert that the confusion arises from the use of the green simulated carrot tops or the green base strip—because these were used by defendant (and others) prior to their adoption by plaintiff. If confusion in ensemble exists, it must arise when the simulated mesh is adopted. But this simulated mesh also is not a novelty introduced by plaintiff.

This being so, the product, or ensemble, cannot fall within the field of trademark protection. Because the rule is settled that confusion resulting only from the addition of a feature or features not originated by the claimant but in common use cannot be the basis of a suit for trademark infringement.

In *Southern California Fish Co.* v. *White Star Canning Co.*, 45 Cal.App. 426 [187 P. 981], both parties marketed canned tuna in cylindrical cans of identical shape and size, and with a label background of the same shade of dark blue. The trademark of each contained a picture representing a tuna fish. The brand name of each was printed in white letters bordered in gold. Each contained recipes for preparation. There were also dissimilarities and the tradename designations were totally dissimilar. It appeared that dark blue labels on tuna cans, and pictures of tuna on labels were all in common use by packers. In reversing a trial court holding that the defendant's later-adopted designation constituted a trademark infringement the appellate court said (p. 430): "*Plaintiff must show deception arising from some feature of its own, not common to the public.*" (Emphasis added.) This excerpt was also quoted in *Sun-Maid Raisin Growers* v. *Mosesian, supra,* 84 Cal.App. 485, at page 493, as a factor distinguishing the facts of *Southern California Fish Co.* from its facts. *Southern California Fish Co., supra,* is a closer case of "confusing similarity" than this because there a similarity existed not only in the background and general arrangement but also in the symbols and in the printing of the tradename itself.

 In summary, we conclude, as the trial court concluded, that here there is no similarity in ensemble, or otherwise, likely to confuse the ultimate, or any, purchaser of carrots exercising even slight care; that whatever similarity

exists occurs solely because of features common in the trade. We also conclude that to uphold plaintiff's position here would imply and prophesy a promise to enjoin any and every competitor of plaintiff with the temerity to market its carrots in polyethylene bags with simulated meshes no matter how plainly differentiated by the brand and tradenames the two products might be. So to rule would not protect free competition; it would stifle it and nurture monopoly. (See *Southern California Fish Co.* v. *White Star Canning Co.*, *supra,* at p. 431.)

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied May 24, 1962.