[Civ. No. 21160. First Dist., Div. One. Jan. 28, 1964.]

PAMELA COLVIG, Plaintiff and Appellant, v. KSFO et al., Defendants and Respondents.

358

Jerome Berg for Plaintiff and Appellant.

Harris Zimmerman, Gardner & Zimmerman, Laurence P. Corbett and St. Sure, Moore & Corbett for Defendants and Respondents.

MOLINARI, J.—This is an appeal by plaintiff, Pamela Colvig, from a summary judgment in favor of defendants.[1]

## Question Presented

Was the trial court justified in granting a motion for summary judgment?

## Statement of the Case

The first cause of action of plaintiff's complaint alleges that plaintiff developed an original format for a disc jockey radio or television program based upon traffic reports and traffic safety information; that as part of this original idea listeners are encouraged to report traffic problems to the disc jockey; that membership cards are given out to listeners in order to promote the program and that plaintiff created the original name for the program, ''Commute Club.''

It is further alleged that the above format and name were licensed by plaintiff to Robert Colvig and that he introduced them on his program over the air in June of 1957; that plaintiff retains and still owns the format, ideas, the program, and its names; that the name ''Commute Club'' has acquired a secondary meaning through its association and use and has come to be known to the listeners in the San Francisco region as an idea originated by plaintiff.

It was alleged that on February 1, 1960, Robert Colvig was dismissed from employment by defendant KSFO; that said defendants were advised by plaintiff at that time of her ownership of the above format but that notwithstanding the cessation of any authority to use plaintiff's ideas, defendants have continued to broadcast the program using plaintiff's format without any compensation to plaintiff.

As a result of the above, plaintiff alleged damage in the sum of $100,000 and prayed that defendants be enjoined from further use of plaintiff's idea; that defendants be or-

---

[1]The appeal purports to be ''from the order granting the motion for summary judgment, and from the whole thereof.'' No appeal lies from an order granting a motion for summary judgment; the appeal must be from the judgment thereon. (*Chilson* v. *P. G. Industries*, 174 Cal.App.2d 613, 616-617 [344 P.2d 868]; *Family Service Agency of Santa Barbara* v. *Ames*, 166 Cal.App.2d 344, 347 [33 P.2d 142].) In the instant case the order for summary judgment and the judgment are incorporated in the same order. Said order and judgment have been entered. The said order has evidently been treated by the parties as a judgment and no point is made by defendants that we are confronted with a nonappealable order. We accordingly are entitled to treat the appeal as being from the judgment which is included in the order, and we so do. (See *Haumeder* v. *Lipsett*, 90 Cal.App.2d 167, 170 [202 P.2d 819].)

dered to account to plaintiff for the profits received by them as a result of the appropriation of plaintiff's property; and that plaintiff be declared the sole owner of the above mentioned ideas, name and format.

Plaintiff's second cause of action incorporates the allegations of the first and alleges: that on February 4, 1960, plaintiff cancelled, terminated and rescinded defendants' rights in said format and name; that on March 3, 1960, plaintiff offered the use of the same to defendants for the sum of $100 per week; that said offer was orally accepted by defendants who continued to use the format and name created by plaintiff; that plaintiff has demanded said payment but defendants have failed and refused to pay plaintiff; and that defendants are indebted to plaintiff in the sum of $100 per week from February 4, 1960.

The above complaint was amended to include two exhibits. One was a sample of the Colvig Commute Club format and the other, a sample of the KSFO Commute Club format. Defendants' demurrer to the amended complaint was overruled. Defendants then filed their answer wherein they admitted that they were continuing to broadcast a " 'Commute Club' " program, but otherwise generally denied the material allegations of the complaint. By way of affirmative defenses defendants alleged that the format and names in question were created by defendants or on behalf of defendants; that defendants are sole owners of the said format and names; that plaintiff has not complied with section 426, subdivision 3, of the Code of Civil Procedure;[2] and that plaintiff is not entitled to recover because her rights were lost and destroyed by a purported license in gross to Robert Colvig.

Thereafter, on April 13, 1962, defendants moved for a summary judgment. The motion stated that it was based on the affidavit of defendant William D. Shaw, general manager of defendant KSFO, the depositions of Pamela Colvig, Robert L. Colvig, interrogatories propounded to plaintiff and "three envelopes" used "in connection with said Answers To Interrogatories." A document entitled "Declaration of Pamela Colvig," signed and declared on her behalf by her attorney, and purporting to be a counteraffidavit was filed in the proceedings. At the hearing of the motion, on May 7,

---

[2]This section provides for an attachment of the copy of the production and the alleged infringing production where the demand for relief is based upon an alleged infringement of plaintiff's rights to a literary, artistic or intellectual production.

1962, an objection to the sufficiency of the ''declaration'' of Pamela Colvig was interposed by defendants. Defendants' counsel did, however, in his argument on the motion, and for the purposes of the motion, ''concede'' all of the allegations of said declaration submitted by plaintiff and ''all of the allegations of the complaint.'' The motion was submitted to the court below after some argument to court and colloquy between court and counsel. The motion for summary judgment was thereafter granted and it was ordered that the complaint be dismissed against each of the defendants.

We are unable to ascertain from the transcript of the oral proceedings before the court at the time the motion was heard exactly what documents were submitted to and considered by the court in connection with the motion, nor have respective counsel been able to give us any elucidation in this regard. The order for summary judgment, made and filed on May 28, 1962, does, however, recite that the trial court considered the pleadings in the action, the aforesaid affidavit of William D. Shaw, the aforesaid declaration of Pamela Colvig, the deposition of Pamela Colvig, taken April 20, 1961, the deposition of Robert L. Colvig, taken April 20, 1961, interrogatories propounded by defendants to Pamela Colvig, and her answers thereto, including certain exhibits opened by one Harry E. Nemoff on November 11, 1961, in connection with said answers. However, at the time this appeal came on before us for oral argument, on October 30, 1963, the record before us consisted only of the said affidavit of William D. Shaw, and said declaration of Pamela Colvig.[3] Leave to augment the record before us to include any depositions, interrogatories and exhibits which were considered by the trial court on the motion for summary judgment was granted, but none were filed or presented within the time designated.[4] The cause was thereupon submitted. Accordingly, the only documents purporting to constitute affidavits in support of and in

---

[3]At the time of said argument there had been lodged with this court, as an exhibit, the deposition of William D. Shaw, taken on April 24, 1962, and filed with the court below on July 17, 1962. This deposition was obviously not used or relied upon in connection with the motion for summary judgment since it was taken *after* the motion for summary judgment was filed, was in no way referred to therein, and was filed in the court below more than two months after the motion was heard and over a month after the trial judge decided the motion. It is clear, therefore, that this deposition was not considered by the trial judge nor is it designated in his order granting the motion as one of the documents or affidavits considered in connection with the motion.

[4]Nor have any been presented or filed to this day.

opposition to the motion for summary judgment for our consideration are, respectively, those of William D. Shaw and Pamela Colvig.

## The Motion for Summary Judgment

In *Saporta* v. *Barbagelata*, 220 Cal.App.2d 463 [33 Cal. Rptr. 661], we recently had occasion to reiterate certain well-established principles applicable to summary judgments, as follows: "The purpose of the summary judgment procedure is to discover, through the media of affidavits, whether the parties possess evidence which demands the analysis of trial. (*Burke* v. *Hibernia Bank*, 186 Cal.App.2d 739, 744 [9 Cal. Rptr. 890]; *Kramer* v. *Barnes*, 212 Cal.App.2d 440, 445 [27 Cal.Rptr. 895]; Code Civ. Proc., § 437c.) The object of the proceeding is to discover proof. (2 Witkin, Cal. Procedure, pp. 1711-1715.) The affidavits of the moving party are strictly construed and those of his opponent liberally construed. (*Eagle Oil & Ref. Co.* v. *Prentice*, 19 Cal.2d 553, 556 [122 P.2d 264]; *Snider* v. *Snider*, 200 Cal.App.2d 741, 748 [19 Cal.Rptr. 709].) A summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact. (*Burke* v. *Hibernia Bank*, *supra*, at pp. 743-744; *Snider* v. *Snider*, *supra*, at p. 748.) In making this determination the respective affidavits are tested by certain applicable rules. The affidavit of the moving party must satisfy three requirements: (1) It must contain facts sufficient to entitle the moving party to a judgment, i.e., facts establishing every element necessary to sustain a judgment in his favor; (2) such facts must be set forth with particularity, i.e., all requisite evidentiary facts must be stated, and not the ultimate facts or conclusions of law; and (3) the affiant must show that if sworn as a witness he can testify competently to the evidentiary facts contained in the affidavit. (*Snider* v. *Snider*, *supra*, at p. 748; *House* v. *Lala*, 180 Cal.App.2d 412, 416 [4 Cal.Rptr. 366]; *Kramer* v. *Barnes*, *supra*, at p. 443.) These requirements are applicable even though no counteraffidavit is filed, and also where the counteraffidavit is insufficient. (*Kramer* v. *Barnes*, *supra*, at p. 443; *Goldstein* v. *Hoffman*, 213 Cal.App.2d 803, 811 [29 Cal.Rptr. 334].) The counteraffidavit in opposition to the motion for summary judgment, on the other hand, must meet the following requirements: (1) It must set forth facts with particularity; and (2) it must set forth facts within the personal knowledge of the affiant, to

which, as the affidavit shall show affirmatively, the affiant can testify competently if called as a witness. (*Snider* v. *Snider, supra,* at p. 750; Code Civ. Proc., § 437c.) In the light of the rule of liberal construction applicable to affidavits in opposition to the motion for summary judgment, our Supreme Court has held that the facts alleged in the affidavits of the party against whom the motion is made must be accepted as true, and with regard to the requirement that the facts must be set forth 'with particularity,' has stated 'that such affidavits to be sufficient need not necessarily be composed wholly of strictly evidentiary facts.' (*Eagle Oil & Ref. Co.* v. *Prentice, supra,* at p. 556; see *Buffalo Arms, Inc.* v. *Remler Co.,* 179 Cal.App.2d 700, 703 [4 Cal.Rptr. 103]; and see *McComsey* v. *Leaf,* 36 Cal.App.2d 132 [97 P.2d 242].) Accordingly, it has also been held that counteraffidavits may state ultimate facts and conclusions of law and need not be composed wholly of evidentiary facts. (*McComsey* v. *Leaf, supra; County of Los Angeles* v. *Stone,* 198 Cal.App.2d 640, 646 [18 Cal.Rptr. 72]; *Whaley* v. *Fowler,* 152 Cal.App.2d 379, 383 [313 P.2d 97].) It should be noted, however, that the rule of liberal construction does not go so far as to permit of a counteraffidavit which merely repeats the allegations of the pleadings or which contains no evidentiary facts at all. (See *Snider* v. *Snider, supra,* at p. 753; and see 2 Witkin, Cal. Procedure, § 78, p. 1715.)'' (Pp. 468-469.)

█ We shall first apply the applicable principles to the affidavit of William D. Shaw, presented on behalf of the moving parties. That affidavit states, in substance, the following: That since December 1956 he has been the general manager of defendant KSFO; that Robert Colvig was plaintiff's husband from about 1955 to at least April 20, 1961; that Robert Colvig was employed by defendant KSFO as a staff announcer from July 1946 to February 1, 1960; that during the term of his employment Robert Colvig had no authority to enter into contracts with third parties which would obligate KSFO to make payments to such third parties for the use of any formats or names owned by such third party; that the Colvig Commute Club in the general format set forth in plaintiff's complaint was broadcast by Robert Colvig on KSFO from July 1, 1957, to February 1, 1960, when his employment with KSFO was terminated; that the Colvig Commute Club format contained in Exhibit A of plaintiff's complaint is representative of, or is an actual script, or is a written copy of an actual broadcast subsequent to July 1, 1957, and was prepared by or on behalf of plaintiff subse-

quent to said date; that in answer to defendants' request, submitted in the form of interrogatories, that plaintiff produce copies of the written format allegedly created by her, the only such writing produced was dated October 7, 1957, some three months after Robert Colvig commenced broadcasting the Colvig Commute Club on KSFO; that defendants, through interrogatories, requested the original or copies of all correspondence with the Library of Congress relative to any of the formats or names set forth in the complaint, and that in response thereto, a Library of Congress communication dated May 24, 1956, was submitted, which date was approximately one year prior to the time when plaintiff contends she created the format or names; that plaintiff never filed an application for registration of a claim to copyright on any of the formats or names set forth in the complaint, and that she never filed any claim or application to register any of the names set forth in the complaint with the State of California; that plaintiff granted an oral license to Robert Colvig to use the names and format allegedly created by her prior to the time the program first went on the air over KSFO, and that the broadcasting of the format and names by Robert Colvig over said station was with plaintiff's consent; that prior to the broadcasting of the format and names over said radio station, plaintiff did not attempt to sell or license the same to KSFO; that plaintiff did not make any overt oral statement regarding ownership of the format and names to any management official of KSFO until January 1960; and that KSFO has at all times maintained that the format and names were and are the property of KSFO.

Tested in the light of the foregoing principles we find that Shaw's affidavit does not state or show that if he were sworn as a witness he could testify as to any of the purported facts stated therein, or that such facts are within his personal knowledge. Moreover, said affidavit does not satisfy the requirement that the facts entitling the moving party to a judgment must be stated with particularity. Aside from the statement relating to Robert Colvig's marital status, his employment by KSFO, his broadcast of the format in question while so employed, and, possibly, the statement as to the extent of Colvig's authority with respect to contracts with third persons, the remainder of Shaw's affidavit consists of statements of ultimate facts, conclusions of law, conclusions of fact, argumentative matter and statements based on hearsay. Insofar as the statements of ultimate fact are concerned,

they are not supported by the requisite *evidentiary* facts showing how or in what manner such statements are established. Accordingly, the affidavit fails to state sufficient evidentiary facts necessary to establish every element to sustain a judgment in defendants' favor.

The apparent theory of defendants' defense is that the format and the several names given it were defendants' property and not that of plaintiff. No evidentiary facts are set out showing how or in what manner defendants acquired such property right. All that is stated by defendants with respect to the property right claimed by them is the conclusionary statement that it has "at all times maintained that the format and names were and are the property of KSFO." Defendants seek to negate plaintiff's property right to the format and its names upon the theory that plaintiff's property right, acquired under the so-called "common law copyright" (see Civ. Code, §§ 980-985; *Desny* v. *Wilder*, 46 Cal. 2d 715, 740-741 [299 P.2d 257]), was lost, pursuant to Civil Code section 983, subdivision (a),[5] when plaintiff publicized the format and its names without having availed herself of the statutory copyright which exists solely by virtue of federal law. (U.S. Const., art. I, § 8; 17 U.S.C.A.; *Michael Todd Co., Inc.* v. *County of Los Angeles*, 57 Cal.2d 684, 689 [21 Cal.Rptr. 604, 371 P.2d 340].) Yet, assuming *arguendo*, that the format and names in question constitute a "composition in letters or art," defendants have not stated sufficient evidentiary facts to show that plaintiff has not obtained said statutory copyright. In this regard, all that is stated by defendants is the hearsay and argumentative statement that in response to a request made through interrogatories plaintiff submitted "a Library of Congress communication dated May 24, 1956," which date was "approximately one year prior to the time plaintiff contends she created the format and names," and the statement of ultimate fact that "Plaintiff never filed an application for registration of a claim to copyright on any of the formats or names set forth in the Complaint. ..." As to the latter, there is no statement or showing that this fact is within the personal knowledge of affiant.

██ It is significant to note, moreover, that the allegations of the complaint appear to allege an appropriation of or infringement upon, both an idea and a name. "Neither com-

---

[5]Civ. Code, § 983, subd. (a), provides: "If the owner of a composition in letters or art publishes it the same may be used in any manner by any person, without responsibility to the owner, insofar as the law of this State is concerned."

mon law nor statutory copyright extends protection to an idea as such.'' (*Desny* v. *Wilder, supra,* at p. 732.) While California does not now accord "individual type" protection to abstract ideas, it does recognize literary property in a particular combination of ideas (which presupposes the expression thereof), or in the form in which the ideas are embodied. (*Desny* v. *Wilder, supra,* at pp. 732-733.) Ideas, however, may be the subject of contract. Accordingly, even though an idea is not property subject to exclusive ownership, its disclosure may be of substantial benefit to the person to whom it is disclosed, and that disclosure, therefore, may be consideration for a promise to pay. Recovery of such payment need not rest upon express contract but may be based on implied contract. (*Desny* v. *Wilder, supra,* at pp. 733-734; *Weitzenkorn* v. *Lesser,* 40 Cal.2d 778, 791-792 [256 P.2d 947].) Moreover, as related to ideas and literary property, it has been held that such implied contract may not only be one implied in fact but one implied in law, i.e., a quasi-contractual obligation imposed by law. (*Desny* v. *Wilder, supra,* at pp. 734-738.) In sum, the "conveyance of an idea can constitute valuable consideration and can be bargained for before it is disclosed to the proposed purchaser, but once it is conveyed, i.e., disclosed to him and he has grasped it, it is henceforth his own and he may work with it and use it as he sees fit.'' (*Desny* v. *Wilder, supra,* at pp. 737-738.) In order to prevail in an action to recover compensation for an abstract idea the idea purveyor must either (a) have obtained an express promise to pay before or after disclosure, or, (b) "the circumstances preceding and attending disclosure, together with the conduct of the offeree acting with knowledge of the circumstances, show a promise of the type usually referred to as 'implied' or 'implied-in-fact.' '' (*Desny* v. *Wilder, supra,* at p. 738.)

 Turning to the case at bench, we find that the allegations of plaintiff's complaint are broad enough to encompass both a combination of ideas, the "expression" of which is entitled to the common law or statutory copyright protection, or an abstract idea subject to express or implied contract. If it is the former, what we have hereinbefore said as to the insufficiency of defendants' affidavit with respect to its failure to state evidentiary facts to establish that plaintiff does not have a statutory or common law copyright is likewise applicable. As to the latter aspect, it should be noted that the complaint alleges affirmatively, in the second cause

of action, that defendants expressly promised to pay the sum of $100 per week for the use of plaintiff's format and its several names. Defendants' affidavit nowhere states any evidentiary facts which would negate such an express contract and thereby establish that such contract did not in fact exist.

■ With regard to the names given said format, the allegations of the complaint are such as to indicate that they may constitute a trademark, tradename, or personal name that has acquired a secondary meaning.[6] All are subject to protection against infringement and unfair use or competition. (*Don Alvarado Co.* v. *Porganan,* 203 Cal.App.2d 377, 381-382 [21 Cal.Rptr. 495]; *Stork Restaurant* v. *Sahati,* 166 F.2d 348; Civ. Code, § 3369, subd. 3; Bus. & Prof. Code, §§ 14300, 14402.) ■ "A technical trademark is a name, symbol, or form, adopted by a person producing or selling goods, and used on his goods to distinguish them from the goods of others." (47 Cal.Jur.2d, Trademarks, etc., § 3, p. 715; Bus. & Prof. Code, §§ 14200, 14201.) The term "tradename" is most commonly used as describing a designation adopted by a person to identify his business as the source of goods or services in order to preserve and increase its goodwill. (47 Cal.Jur.2d, Trademarks, etc., § 3, p. 715; *Hall* v. *Halstrom,* 106 Cal.App. 563 [289 P. 668].) ■ A person who first *adopts* and *uses* a trademark or tradename, within or without the State of California, is its original owner. (Bus. & Prof. Code, §§ 14270, 14400.) ■ In California trademarks are subject to registration (Bus. & Prof. Code, § 14230), and when so registered they are prima facie evidence of the ownership thereof (Bus. & Prof. Code, § 14271); but a tradename, as such, is not capable of registration. (See 47 Cal.Jur.2d, Trademarks, etc., § 13, pp. 724, 725.) ■ While names and designations which are not capable of becoming technical trademarks or tradenames are not regarded as property, the law of unfair competition protects them under the doctrine of secondary meaning. (*Physicians Electric etc. Corp.* v. *Adams,* 79 Cal.App.2d 550 [180 P.2d 422]; *Modesto Creamery Co.* v. *Stanislaus etc. Co.,* 168 Cal. 289 [142 P. 845].) ■ A name or designation has a secondary meaning when it has been used so long or in such a way that the public has come to associate it with the person using it, and the criterion as to whether such

---

[6]These are alleged to be as follows: "Commute Club"; "The Commute Club"; "The Colvig Commute Club"; "Colvig's Commute Club"; "Bob Colvig's Commute Club" and "The Bob Colvig Commute Club."

secondary meaning exists depends on whether the public is likely to be deceived. (*Eastern-Columbia, Inc.* v. *Waldman,* 30 Cal.2d 268 [181 P.2d 865] ; *Academy of Motion Picture, etc. Sciences* v. *Benson,* 15 Cal.2d 685 [104 P.2d 650] ; *Jackson* v. *Universal Internat. Pictures, Inc.,* 36 Cal.2d 116 [222 P. 2d 433].) ▮ It is also convenient to note here, that copyright law does not protect the title of literary property against use tending to deceive the public relative to authorship or origin. (*Jackson* v. *Universal Internat. Pictures, Inc., supra.*) ▮ Accordingly, since titles to literary works are usually descriptive and their protection dependent upon secondary meaning, the general principles of the law of unfair competition apply. (See 47 Cal.Jur.2d § 31, p. 756; Nims, Unfair Competition and Trademarks (4th ed.) §§ 274a, 276.) ▮ It is apparent from the foregoing that ownership of a trademark, tradename or names protected under the doctrine of secondary meaning need not be registered; and that, in the case of a trademark, mere registration does not establish ownership, but only affords prima facie evidence thereof. Prior adoption and use are essential for acquisition of ownership. (*John Beard Memorial Foundation* v. *Krebs,* 96 Cal.App.2d 597 [215 P.2d 939] ; 47 Cal.Jur.2d § 15, p. 727.)

▮ Again adverting to the case at hand, we find nothing in defendants' affidavit which negates prior adoption or use of the names in question by plaintiff or which establishes such adoption or use by defendants. Moreover, defendants' statement in their affidavit that plaintiff has not registered any of such names is not based upon evidentiary facts but is the statement of an ultimate fact based on hearsay or the affiant's conclusion.

We conclude, therefore, that the affidavit of the moving party does not state facts sufficient to support the judgment. ▮ In view of this conclusion, we need not proceed to determine whether the declaration of plaintiff, presented as a counteraffidavit, proffers competent and sufficient evidence to present a triable issue of fact. (*Southern Pacific Co.* v. *Fish,* 166 Cal.App.2d 353, 365-366 [333 P.2d 133] ; *Gardenswartz* v. *Equitable etc. Soc.,* 23 Cal.App.2d Supp. 745, 750-751 [68 P.2d 322].)

The judgment is reversed.

Bray, P. J., and Sullivan, J., concurred.