the evidence and the credibility of the witnesses. That is not the case. As before stated, our province is simply to say whether there was any evidence from which the findings could have been made. As to this we are satisfied that there was ample evidence that all the shipments, except the oakite, arrived on the wharf in Camden on or before July 15; that the plaintiff received notice and knew of their arrival much more than 72 hours prior to the fire; and that the findings of the court material to a decision of the rights of the parties with reference to the shipments of the wool and soap were not only supported by the evidence, but clearly right.

[3] But as to the oakite, after an extended examination of the record, we are unable to find any evidence from which it could be found that it was received on the wharf before July 21, or that it was received and notice given or knowledge had by the plaintiff of its receipt 72 hours or more before the fire. According to Defendant's Exhibits M and N, it does not appear to have been shipped from New York until July 22, and we are unable to find any testimony or other evidence showing when it arrived at Camden, or when the plaintiff received notice of its being there. Such being the situation, the judgment must be vacated, and the case remanded to the District Court for further proceedings.

The judgment of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the plaintiff in error to recover costs in this court.

---

MIDDLEBY-MARSHALL OVEN CO. v. WILLIAMS OVEN MFG. CO.

(Circuit Court of Appeals, Second Circuit. May 17, 1926.)

No. 267.

1. Trade-marks and trade-names and unfair competition ⊚⟿31—Where defendant had contract right to use complainant's name, "Middleby Oven Company," in connection with inside furnace ovens only, held, that complainant, having first used such name in connection with continuous ovens, had exclusive right thereto in connection with such ovens, and defendant's use of such name in connection with continuous ovens will be enjoined.

Where defendant had exclusive contract right to manufacture and sell ovens under complainant's name, "Middleby Oven Company," in certain territory, right being limited to inside furnace ovens and excluding continuous ovens, held that complainant, having subsequently used name "Middleby" in connection with continuous ovens, and having sold such ovens in defendant's territory before defendant began manufacture of such ovens, was entitled to exclusive use of such name in connection therewith, and defendant's advertisement and sale of continuous ovens as being made and guaranteed by "Middleby Oven Company" will be enjoined, notwithstanding it gave name "Universal" to such ovens.

2. Trade-marks and trade-names and unfair competition ⊚⟿86—Complainant's delay of eight years in suing to restrain use of its trade-name in connection with manufacture and sale of ovens held to bar decree for accounting, where defendant's belief that it was entitled to use name in that connection was not unreasonable.

Where complainant did not commence suit to restrain defendant, which had contract right to use complainant's trade-name in connection with certain kind of ovens, from using complainant's name in connection with other ovens until eight years after complaining to defendant of such use, and defendant's belief that it had right to use name in that connection was not unreasonable, held, that plaintiff's laches barred decree for accounting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Middleby-Marshall Oven Company against the Williams Oven Manufacturing Company. Decree for complainant, and defendant appeals. Affirmed.

The following opinion of Augustus N. Hand, District Judge, was filed in the court below:

"This is a suit for infringement of the trade-name 'Middleby.' On September 28, 1910, the parties hereto entered into a contract that the defendant might have the exclusive right to manufacture and sell a baking oven known as the 'Middleby oven' in New York, New Jersey, Pennsylvania, Maryland, Delaware, the District of Columbia, Virginia, North Carolina, South Carolina, Georgia, and Florida. The contract also provided that the complainant should have the exclusive right to manufacture and sell Williams ovens in all the states of the United States except those above mentioned. It was further agreed that the defendant should have the right to do business in the territory allotted to it under the trade-name of the Middleby Oven Company, and that the complainant should have the right to do business in the territory transferred to it in the name of the Williams Oven Company. The contract, however, provided that the agreement was 'limited in all cases to what is known as the inside furnace style, that is, an oven in which the fire which is used to heat it is plac-

ed in the baking chamber proper,' and that it should 'not exclude either of the parties * * * from manufacturing or selling what is known as the continuous baking oven, that is, an oven where the fuel used for heating is not within the baking chamber.'

[1] "At the time the contract was executed the complainant bore the corporate name of Middleby Oven Manufacturing Company, which was changed in 1911 to Middleby-Marshall Oven Company. The inside baking furnace was invented by one Joseph Middleby in 1888, and in 1891 he assigned the business, including good will and trade-marks, to Middleby Oven Company, a Massachusetts corporation. In 1894, the complainant was organized in Illinois, and received from the Massachusetts corporation assignments of its business in all states and territories west of Pennsylvania and south of Delaware. Prior to 1904, one Kennard acquired from the Massachusetts corporation all of its business in the states of New York, New Jersey, Delaware, and Pennsylvania, including the exclusive right to do business under the name of the 'Middleby Oven Company' and the right to use the name 'Middleby' in connection with inside baking ovens, and between 1894 and 1904 the same rights in Maryland, Virginia, District of Columbia, North Carolina, South Carolina, Georgia, and Florida. In 1905 he assigned this business and these rights to John I. Marshall and J. S. Holden, stockholders of the complainant corporation. Defendant's answer alleges that the business and rights of Kennard were purchased about 1906 'by representatives and officers of the plaintiff company.'

"Between 1899 and 1910, J. Faulds and J. I. Marshall, both of whom were associated with the complainant, devised and patented certain improvements in a continuous oven, and the complainant sold 7 of these ovens inside the territory and 45 outside the territory assigned by the contract of 1910 to the defendant, between the years 1899 and 1910. Most of them were sold after 1906, and were advertised as Marshall ovens, to distinguish them from the Middleby inside oven. Now the devolution of the business and rights from Kennard to the complainant is not most precisely set forth, but in view of the close relationship of his assignees to the complainant, shown in the stipulated facts and the allegation of the answer that the transfer was by a purchase of 'representatives and officers' of the complainant, it is fair to assume that the complainant became the owner of the business, good will, and trade-name of the Massachusetts company, except for the New England business. Out of these rights was carved a license to the defendant to use the trade-name 'Middleby Oven Company' within the 11 localities specified in the contract of 1910, in respect, however, to inside furnaces only.

"Now the complainant sold in the years 1910 to 1913, inclusive, 29 continuous ovens within the contract territory and 268 outside that territory. While they were called Marshall ovens, most, if not all, of them bore name plates indicating that they were made by the complainant; that is, Middleby Oven Manufacturing Company or Middleby-Marshall Company, according as the name of the company at the time was. Moreover, the complainant appears to have been called in the trade 'Middleby Oven Company.' The term 'Marshall Oven Company' was used but for a year or two in the beginning, in connection with the Marshall ovens. Moreover, as I have said, the word 'Middleby' in some respects practically always appeared in connection with advertising and name plates.

"In 1913 the defendant began to make continuous ovens, and, while they were called Universal ovens, they were advertised and sold in the contract territory as 'made, installed, and guaranteed by Middleby Oven Company.' In other words, the defendant used, not its own corporate name, but the name which the contract with the complainant allowed it to use only as a trade-name in connection with inside ovens in that territory. I think the proof shows that the complainant had established a business in continuous ovens in this territory, and had sold them under its name, though with the subordinate description of 'Marshall,' before the defendant began to put out continuous ovens. As soon as the defendant began to refer to these continuous ovens as guaranteed by Middleby Oven Company, there was a protest from the complainant, and later came a protest against the use of the words 'Middleby Oven Company' except as to inside furnace ovens. Nothing further was done by complainant for eight years, when it brought this suit. In my opinion, the complainant first used the name 'Middleby' in connection with continuous ovens, and marked such ovens with the name 'Middleby.' It was therefore entitled to the use of that name for this reason, even if it had not a right to extend its trade-name to continuous ovens as part of the general class to which inside ovens belonged. American Tobacco Co. v. Polacsek (C. C.) 170 F. 117. Defendant, because of its contract allowing it to use 'Mid-

dleby' in connection with inside ovens, was not entitled to use 'Middleby' except as to those ovens.

[2] "But the rights of the parties were not simple. The defendant, having the privilege of using the name 'Middleby Oven Company' within the contract territory, might not unreasonably believe that the good will in that old name, to which it was adding value by its business in the inside ovens, could rightly be made available for continuous ovens, if they were distinguished from the Marshall ovens by the name 'Universal.' I think it was wrong, but the controversy, by reason of its difficulty and doubtfulness, should have been promptly taken to court by the complainant, instead of being postponed for years. Such laches is a bar to a decree for an accounting (McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828), but an injunction is granted against the use of the word 'Middleby' by the defendant in connection with continuous ovens.

"The decree shall be without costs."

Nims & Verdi, of New York City (Harry D. Nims, Minturn De S. Verdi, and Frederick C. Hunter, all of New York City, of counsel), for appellant.

Theodore S. Kenyon and Merrill M. Manning, both of New York City, for appellee.

Before HOUGH, MANTON, and MACK, Circuit Judges.

PER CURIAM. Decree affirmed, with costs, upon the opinion of Augustus N. Hand, District Judge.

---

UNITED STATES v. STERLING.

(Circuit Court of Appeals, Second Circuit. June 4, 1926.)

No. 360.

1. Army and navy ⬤�ック51½, New, vol. 12A Key-No. Series.

Under War Risk Insurance Act (Comp. St. Ann. Supp. 1919, § 514a et seq.), no beneficiary has or can have any rights against United States, except such as have been given and not taken away by insured.

2. Army and navy ⬤⟫51½, New, vol. 12A Key-No. Series—Estranged wife, refusing to surrender war risk policy for change of beneficiary held not entitled to recover on policy on death of insured after issue of duplicate policy on which change was indorsed (War Risk Insurance Act, §§ 402, 404 [Comp. St. Ann. Supp. 1919, §§ 514uuu, 514vv]).

Where the United States, on refusal of estranged wife of former soldier to surrender war risk insurance policy, on which she had paid premiums and wherein she was named beneficiary issued a duplicate policy and indorsed

thereon a change of beneficiary, held in action by wife on policy after insured's death, verdict should have been directed for the United States, in view of War Risk Insurance Act, §§ 402, 404 (Comp. St. Ann. Supp. 1919, §§ 514uuu, 514vv).

In Error to the District Court of the United States for the Eastern District of New York.

Action by Alma B. Sterling against the United States. Judgment for plaintiff, and the United States brings error. Reversed, and new trial ordered.

Mrs. Sterling, the plaintiff below, is the widow of a soldier insured by the United States under the War Risk Insurance Act (40 Stat. 398 [Comp. St. Ann. Supp. 1919, § 514a et seq.]). For some time before Sterling's death his policy was of the "twenty payment life" kind, and until within a few months of his decease the plaintiff was the beneficiary named in the policy. She had physical possession of the policy, and herself paid the premiums. This method of payment is said to have resulted from a bargain between husband and wife, to the effect that, if she would let him take the surrender value of another policy on his life in a private company, she would keep the United States policy, and on paying the premiums herself receive the 20 payments after his death. Some time before he died, Sterling quarreled with and separated from his wife, and evidently wished to deprive her of his war risk insurance.

Sections 402 and 404 of the statute (40 Stat. 409, 410 [Comp. St. Ann. Supp. 1919, §§ 514uuu, 514vv]) give ample power to the Secretary of the Treasury to make and change regulations governing the administration of the law, and the statute itself declares that, "subject to regulations, the insured shall at all times have the right to change the beneficiary * * * of such insurance without the consent of such beneficiary." The form of policy issued to Sterling required that, when a change of beneficiary was wanted, notice of change must be given, "accompanied by the policy for an indorsement of the change thereon." Further the policy declared that the substitution should "not take effect unless such change is *indorsed on the policy*."

Sterling duly gave notice to the proper Bureau of the Treasury that he changed the beneficiary from his wife to his father and sister; the Bureau advised Mrs. Sterling that such change required indorsement on the policy, unless Sterling made affidavit that he had lost the policy beyond hope of recovery. On