[Civ. No. 7820. Third Dist. June 4, 1951.]

H. MOFFAT COMPANY (a Corporation), Respondent, v. JOHN KOFTINOW et al., Appellants.

Forrest E. Macomber, Hawkins & Hawkins and Fowler & Fowler for Appellants.

Cleary & Zeff, C. Ray Robinson and Margaret A. Flynn for Respondent.

VAN DYKE, J.—Plaintiff and respondent is a corporation. Defendants and appellants are the members of a partnership doing business under the firm name of "Manteca Veal Company." Neither the corporation nor the partnership maintains or has maintained a place of business in the town of Manteca. Respondent has been engaged in the wholesaling of meats for a great many years. Its principal place of business is and has been the city and county of San Francisco. Appellants are likewise engaged in the wholesaling of meats and their principal place of business is and since 1943 has been the city of Turlock. Formerly their predecessor in the use of the name had a place of business in French Camp, not far distant from the town of Manteca. Until approximately 1943 the defendants and their predecessors dealt exclusively in veal. Thereafter they also dealt in beef and began the prominent use of the word "Manteca" in connection with this product. Claiming that it owned by prior and constant use the property of a trade name in the word "Manteca" when used to designate and describe a certain special quality of meat products and that appellants were guilty of infringement thereof, the respondent brought action to restrain such infringement. Responsive to findings by the court favorable to respondent the court permanently enjoined appellants from in any manner using or employing the word "Manteca" in the designation, description, displaying, advertising, labeling, selling and distributing of their meat products and from in any manner deceiving or misleading the public into believing that the appellants' meat products were those of respondent.

There was substantial evidence to the following effect: That before 1934 and at all times since respondent had developed,

promoted and advertised a special quality product known as "Manteca beef" and had spent in excess of $100,000 in such development, promotion and advertising; that cattle from which "Manteca beef" results are specially fed at feed lots and the beef so produced sells at a premium and through the course of the years has become widely known and accepted in the trade and by the public by its trade name "Manteca"; that the beef marketed under the name "Manteca" is specially graded and safeguarded as to quality and character; that with the exception of the defendants no person or corporation has used the word "Manteca" or the words "Moffat's Manteca Fed Beef" or "Moffat's Manteca Baby Beef" at any time in the meat industry, except for one corporation which long ago ceased to do business; that before 1943 the appellants had never marketed beef, but that subsequent to 1943 they had done so, but in doing so did not label their beef carcasses with the word "Manteca" or with the words "Manteca Veal Co."; that in July, 1948, they began using a roller label similar to that which had been long used by respondent which prominently utilized the word "Manteca"; that the word "Manteca" was used in early Spanish California as meaning a layer of fat nearest the hide of cattle, delicate in flavor and texture and widely used for cooking; that the word is also the name of a town near which respondent conducted its early experiments in the special feeding of beef cattle which it has, since 1933, marketed under labels describing it as "Moffat's Manteca Fed Beef" or "Manteca Beef" or "Moffat's Manteca Beef"; that respondent adopted the word "Manteca" as descriptive of these special products because of the meaning of the word in early California speech, and because of the location of the original feed yard near the town of Manteca; that roller branding is so done that a portion of the roller brand will appear on each cut of meat from a carcass of beef sold. The court found in accordance with the foregoing evidence and further found that the roller label used by appellants would and did deceive the public, the trade and the industry into believing that they were purchasing "Manteca Beef" as produced and sold by respondent and that the right to use the word "Manteca" in respect to meat products, as well as the words "Manteca Fed Beef" and "Moffat's Manteca Baby Beef" has been and is the property of the respondent. It is undisputed that appellants and respondent do business in the same trade area though respondent's products are more widely distributed.

564

Appellants first contend that insofar as respondent's action was based on infringement of a valid trademark no cause of action is stated. It is unnecessary to follow respondent's argument on that assignment of error, for we think that the judgment must be sustained upon the theory that the action involved misuse of a trade name owned by the respondent and imitated to the point of deception by appellants. Any person who has first adopted and used a trade name is its original owner and the violation of such person's rights therein may be enjoined. (Bus. & Prof. Code, §§ 14400, 14402.)

Where both consist of the use of words there is little distinction between a trademark and a trade name, except that in respect to the trademark it is generally considered as being an emblem of some sort affixed to the product as distinguished from a trade name adopted and used to denominate the goods of the user.

Appellants assert that respondent's trade name is "H. Moffat Company," while their trade name is "Manteca Veal Co." and that there is no similarity between the two. This assertion clearly misses the point of the inquiry. The evidence is substantial and abundant that with respect to a certain specialized product, that is, a specially fed beef, the respondent has for long sought to describe, and has succeeded in describing, that special product by a trade name involving particularly the use of the word "Manteca." This denominative descriptive process has gone on until, according to the testimony, the trade name has in a public sense come to mean that particular product marketed by respondent. The evidence was sufficient to establish that the word "Manteca" in connection with beef products and in the general market where both respondent and appellants do business, has acquired a fanciful meaning and one that has no connection with the ordinary meaning of the word or with the name of the town, Manteca. We think the evidence further establishes that these meanings have dropped into the background and that now the right to use the word as descriptive of meat products is in the respondent. Indeed, the evidence establishes that this word has acquired such a special meaning that it now makes up in part the good will and reputation of respondent's business. (*Eastern Columbia, Inc.* v. *Waldman*, 30 Cal.2d 268, 271 [181 P.2d 865].)

Appellants contend that the word "Manteca" constitutes a geographical name, that is, the name of a town, and that it cannot, therefore, be the subject of a trademark. It is

true that the Business and Professions Code provides that a trademark cannot consist of a mere geographical name (§ 14242), but assuming that the word "Manteca" is geographical in a local sense in that it is the name of a town, still the rule invoked has no application here where the court has found on substantial evidence that the word has become a trade name. Even geographical names may become such. (Restatement of Torts, § 720, Com. b.)

Appellants contend that the court erred in finding that the roller label used by appellants would confuse their goods with those of respondent and rely upon the rule with respect to such markings that the final test is to place the two markings side by side and from the whole appearance determine whether or not consumers of these products would be deceived. The court found against this contention and we think that its finding is justified. The test is not whether upon a close examination the ordinary consumer would be deceived, but whether, upon the sort of examination that such a person gives, deception would result; that is, whether or not the ordinarily prudent buyer would be deceived. Respondent's roller repeats the words "Moffat's Manteca," whereas appellants' roller repeats the words "Manteca Veal Co.'s Select" or "Manteca Veal Co.'s Premium." In appellants' roller the words "Manteca" and "Select" are emphasized over the remaining two words, and we think the trial court could find from a comparison of the two labels that the ordinarily careful purchaser, seeing meat marked with defendants' label, might well confuse it with respondent's product, which he desired to buy. In part, the court could have based this finding upon the extent and kind of advertising by means of which respondent has sought to identify the word "Manteca" on its products with itself as the source thereof. The testimony was without conflict that this advertising had been quite extensive and had gone on for a very long time. It consisted of extensive newspaper advertising, of neon signs emphasizing the word "Manteca" in connection with respondent's product, of menus furnished the restaurants, of labels attached to cooked meat by means of toothpicks inserted therein as they were presented for consumption by restaurant patrons, and the like. A public so conditioned to identify the word "Manteca" appearing on the meat, with respondent as producer of the product, could easily be confused by the appellants' roller label as applied to beef carcasses.

Appellants pleaded laches and here contend that this

defense was made out as a matter of law. However, in view of the court's findings hereinbefore noted that appellants' conduct constituted infringement, the doctrine of laches is not applicable. ". . . laches is not ordinarily a defense to an application for an injunction to restrain an infringement on the use of a duly registered and privately owned trade mark or name. Where the public has not been misled or deceived to its damage by the delay in instituting an action for infringement against the use of a trademark or design, mere laches will not furnish a defense." (*Hall* v. *Holstrom,* 106 Cal.App. 563, 570 [289 P. 668].)

"In suits for unfair competition or infringement mere laches in the sense of delay to bring suit does not constitute a defense. Such laches may, under some circumstances, bar an accounting for past profits, even though not sufficient to bar an injunction against a further continuance of the wrong. Laches or delay must be accompanied by circumstances amounting to an abandonment or an estoppel before it constitutes any defense." (63 C.J. 526, § 227.)

It is plain here that respondent has never abandoned, nor indulged in acts which could be construed as an intent to abandon, the use of the trade name here involved; on the contrary it has vigorously continued building up in the minds of the public served by both the parties here the acceptance of the name as indicating respondent's product.

Appellants contend that the evidence conclusively shows that respondent itself practiced fraud and deceit upon the public in connection with its trade name and is therefore entitled to no equitable relief, but here the contention is clearly against the proven facts. It is true, as appellants contend, that not more than roughly a third of the cattle which respondent has specially fed and which could be marketed as "Manteca Beef," has been fed at the Manteca feed yard maintained by respondent and that the rest have come from other feed yards, where, however, the same method of finishing the beef for market has been followed. But the testimony clearly shows that throughout the emphasis placed by respondent in its use of the word "Manteca" in connection with its products has been upon the quality of the beef as being the product of special feeding and not at all upon the town near which one of its feed yards, and the original one, is located. The court found against the pleaded defense and the evidence fully justifies its finding.

As hereinbefore noted, the appellants were restrained

from using the word "Manteca" in the designation, description, displaying, advertising, labeling, selling and distributing of their meat products. This form of injunction was appropriate under the facts of this case. It is apparent that appellants' marketing of their goods in the way in which they have been doing will result in a fraud upon both the respondent and the general public in that it will result in their being marketed as the products of respondent. There appears to have been no good reason from the beginning for appellants' use of the name "Manteca" in its firm name, for they have never conducted their business in the town of Manteca and the court could well infer that from the beginning they were aware of the possibility, if not the probability, that as their market expanded there would be likelihood of confusion. There seems to be no practical way in which an injunction less broad would remedy the injury shown to have been inflicted and extremely likely to continue. The trial court was justified in adopting the form of injunctive decree which it has here used.

The judgment is affirmed.

Adams, P. J., and Deirup, J. pro tem., concurred.

A petition for a rehearing was denied July 3, 1951, and appellants' petition for a hearing by the Supreme Court was denied August 2, 1951.