[Civ. No. 17808. Fourth Dist., Div. Two. Feb. 27, 1979.]

TUSTIN COMMUNITY HOSPITAL, INC.,
Plaintiff and Appellant, v.
SANTA ANA COMMUNITY HOSPITAL ASSOCIATION et al.,
Defendants and Appellants.

## Counsel

McGuire & Bauer, Ronald L. Bauer and John D. McGuire for Plaintiff and Appellant.

Wenke, Taylor, Schumacher & Evans and Gary L. Taylor for Defendants and Appellants.

## Opinion

**GROVER, J.**\*—Defendants Santa Ana Community Hospital Association, a corporation, and Santa Ana-Tustin Community Hospital, a corporation, have appealed from a judgment enjoining them from using the name "Santa Ana-Tustin Community Hospital" for their hospital in the City of Santa Ana. The essential basis of the judgment is the finding that that name is confusingly similar to "Tustin Community Hospital," the name of plaintiff's nearby hospital which is located in the adjacent City of Tustin. Plaintiff has cross-appealed from that portion of the judgment which refuses to enjoin defendants from using any other confusingly similar name.

From 1902 until 1941, defendants' predecessors operated hospitals in the City of Santa Ana, using the names Santa Ana Hospital, Santa Ana Valley Hospital and Santa Ana Community Hospital. Defendant Santa Ana Community Hospital Association was incorporated in 1941, and from that year until April 19, 1975, it operated a general, acute care hospital at 600 East Washington Avenue in the City of Santa Ana, using the name Santa Ana Community Hospital. Defendant Santa Ana-Tustin Community Hospital was incorporated March 15, 1972, and on April 19, 1975, it commenced operating a general, acute care hospital at 1001 North Tustin Avenue in the City of Santa Ana, using the name Santa Ana-Tustin Community Hospital. On April 19, 1975, the officers and directors of the two defendant corporations were the same, and the patients and employees of Santa Ana Community Hospital Association at the Washington Avenue hospital were transferred to the new hospital on Tustin Avenue, where they became the patients and employees of Santa Ana-Tustin Community Hospital. Most of the supplies and equipment at the older hospital were also transferred.

\*Assigned by the Chairperson of the Judicial Council.

Plaintiff was incorporated in 1966, and since May 7, 1970, has operated a general acute care hospital in the City of Tustin, using the name Tustin Community Hospital.

In the complaint, filed June 11, 1974, plaintiff alleged that the defendants were then constructing the new hospital on Tustin Avenue, about one and one-half miles from plaintiff's hospital; that upon completion of construction, defendants planned to conduct business there under the name Santa Ana-Tustin Community Hospital; that defendants were already engaged in advertising and publicity involving the new name; and that use of the new name would cause public confusion, with resultant irreparable injury to plaintiff. In their answer, defendants denied that the services they provided were similar to plaintiff's; admitted that they planned to complete construction of the new hospital and then operate it under the name Santa Ana-Tustin Community Hospital; and denied that any public confusion would result from the use of that name. At the commencement of the trial, defendants were permitted to file an amendment to their answer setting up special defenses which alleged that plaintiff had failed to act with due diligence, that plaintiff was guilty of laches and that plaintiff failed to exhaust administrative remedies. Plaintiff's motion prior to trial to file a supplemental complaint seeking damages was granted, but later the request was withdrawn; the only relief ultimately requested, therefore, was an injunction.

A preliminary injunction was denied June 26, 1975.

Plaintiff's request for a jury trial was denied, and the case was tried without a jury in November and December of 1976.

At the conclusion of the trial, the court found that the name of defendants' new hospital is confusingly similar to the name of plaintiff's hospital, that this confusion persists, and that it will not abate with passage of time. The court concluded that irreparable damage to plaintiff and to the public has resulted, and that defendants' use of the trade name Santa Ana-Tustin Community Hospital constitutes unfair competition with plaintiff. In connection with the special defenses of the amendment to the answer, the court concluded that laches is not a proper defense to this action and ordered all evidence on that topic stricken; the court further concluded that plaintiff had lacked any effective administrative remedy.

Although the prayer of the complaint was merely that the name Santa Ana-Tustin Community Hospital be enjoined, plaintiff's proposed judgment included an injunction against defendants' use of any other name confusingly similar to Tustin Community Hospital. Defendants' objection to this provision was upheld, and the judgment as signed enjoins only the use of the name Santa Ana-Tustin Community Hospital.

Findings of fact, conclusions of law and judgment were filed March 3, 1977.

In a contempt proceeding initiated by plaintiff, following defendants' continued use of the name Santa Ana-Tustin Community Hospital, the trial court ruled on April 14, 1977, that the judgment was stayed pending appeal. Plaintiff's petition for writ of review to reverse that determination was denied by this court on September 14, 1977. (*Tustin Community Hospital, Inc.* v. *Superior Court,* No. 4 Civ. 19324.)

In requesting reversal, defendants contend: (1) that plaintiff's action is barred by laches; (2) that no "secondary meaning" of plaintiff's name was established; (3) that the cause of the claimed confusion was not established; and (4) that the appropriate solution is a public educational program rather than a change of defendants' name.

I

■ We agree with defendants that laches can be a defense to an injunction case based on unfair competition[1] and that the trial court should not have stricken the evidence on that subject. For this reason, the judgment must be reversed.

Lawyers and judges today so generally regard laches as including both tardiness and a resulting prejudice that it is well to remember that the word comes from the Latin "laxus" meaning loose, and that it is related to the word slack. Intrinsically, therefore, laches suggests no more than a

---

[1]There is no reason in this case to go beyond the common view of unfair competition as an infringement of another's trade name, although, in a broader sense, the words unfair competition might well be used to include a number of other unlawful business practices. (See Chaffee, *Unfair Competition,* 53 Harv.L.Rev. 1289, 1296; 1 Callman, The Law of Unfair Competition, Trademarks and Monopolies (3d ed. 1967) § 4.1, pp. 108-128.) Nor does it appear that it is necessary in the present discussion to distinguish between trademark infringement cases and unfair competition cases. (Cf. Chaffee, *op.cit.,* 1296-1298; fns. 4 and 5, *post*; see 87 C.J.S., Trade-marks, Trade-names, and Unfair Competition, § 19, pp. 254-256.)

failure to be timely or diligent. Of the five readily available general dictionaries we have consulted, all agree that laches is obsolete in ordinary speech and all agree that it has a current meaning in law. But not all of them agree that that legal meaning goes beyond the mere failure to be timely or diligent. The Random House Dictionary definition ends with: "esp. such delay as will bar a party from bringing a legal proceeding" and the Funk and Wagnalls New Standard Dictionary contains alternative definitions: "inexcusable delay in asserting a right; such delay as warrants a court in refusing relief." The three remaining dictionaries (American Heritage Dict., Oxford English Dict., and Webster's Third New Internat. Dict.) speak only of delay as such, without indicating that laches involves an additional element of prejudice to the opposing party. Consistent with this uncertainty, Pomeroy states that "in some of the cases" mere lapse of time can constitute the defense, nevertheless "the generally accepted doctrine" is that laches is not a mere matter of time but is principally a question of "the inequity of permitting a claim to be enforced, this inequity being founded on some change in the condition or relations of the property or the parties." (2 Pomeroy on Equity Jurisprudence (5th ed. 1941) § 419d, p. 177.) Law dictionaries also include references to both meanings. (Black's Law Dict. (4th ed.); Ballentine's Law Dict. (3d ed.); Bouvier's Law Dict. (3d rev.).)

The word estoppel, which is also important in reviewing the conflicting authorities on the present question, is likewise ambiguous. All five of the general dictionaries just referred to again agree that the word is obsolete, or at least rare, in ordinary speech, and that it does have a current meaning in law. Four of them further agree that the essence of the legal use of the word is to deny to a party the right to take a position inconsistent with his former representations. The Oxford English Dictionary, on the other hand, suggests a more fundamental meaning of estoppel, that is, stopping, barring, hindering or precluding. This dictionary then adds: "*Chiefly* . . . to be precluded by one's own previous act or declaration from doing or alleging something." (Italics added.) We know from such legal concepts as estoppel by judgment and collateral estoppel that the Oxford definition is the more accurate. Perhaps the most helpful treatment of all is in Bouvier's Law Dictionary, where three different types of estoppel are discussed at some length: estoppel by deed, estoppel by record and estoppel in pais. Significantly, the last classification in Bouvier includes reference to a number of cases involving estoppel by silence—cases in which a party's failure to speak or to take action is held to constitute a bar.

At least three California infringement cases have referred to "estoppel by laches." (*Tomsky* v. *Clark,* 73 Cal.App. 412, 420 [238 P. 950]; *Hotel Sherman, Inc.* v. *Harlow* (S.D. Cal.) 186 F.Supp. 618, 620; *Golden Door, Inc.* v. *Odisho* (N.D. Cal.) 437 F.Supp. 956. See also *Herminghaus* v. *South. California Edison Co.,* 200 Cal. 81, 103 [252 P. 607].) This phraseology is etymologically apt for it combines the essence of laches (laxness, inattention to duty) with the essence of estoppel (stopping, barring, precluding). Indeed, Black's Law Dictionary (4th ed.) has a separate entry for "laches, estoppel by." A number of the text writers echo this approach[2] and in fact, in one leading text, Callman on The Law of Unfair Competition, Trademarks and Monopolies (3d ed. 1967), the present subject is discussed under the formal heading of Estoppel by Laches. (Vol. 4, § 87.3, p. 120.) In this view, estoppel by laches is that type or degree of delay or inattention to duty which, when weighed with all other equitable considerations, results in a bar to relief.

The point of all of this is that a careful analysis of the more troublesome cases on the subject reveals that many of those which hold that laches is not a bar to an injunction are referring only to "mere" laches, to laches "without more," that is, to mere laxness or delay or passage of time, without considering whether there has been any resulting inequitable prejudice to the other side. In this same sense, a statute of limitations is a bar or a defense by reason of the mere passage of time. Statements to the effect that mere delay without more does not constitute a bar to an injunction are easily reconciled with the general rule that laches which does result in inequitable prejudice to another party is a bar to such relief. A real collision of authority occurs only in those infringement decisions which hold that a type or degree of laches which has inequitably prejudiced the other side is nevertheless not a bar to an injunction. Our research indicates that such decisions are rare.

A frequently cited decision of the United States Supreme Court, and one which is heavily relied on by plaintiff here, is *McLean* v. *Fleming,* 96 U.S. 245 [24 L.Ed. 828]. Its importance as a precedent, however, is doubtful. In the trial court, both damages and an injunction were awarded and the defendant appealed. But even before the action was commenced the defendant had agreed to the plaintiff's suggestion for a revision of defendant's mark to distinguish it from plaintiff's (96 U.S. at

[2]See Calimafde, Trademarks and Unfair Competition (1970) sections 15.01-15.04, pages 678-692, especially footnote 14; Nims, Unfair Competition and Trademarks (1947) section 409, page 1278; Vandenburgh, Trademark Law and Procedure (2d ed. 1968) § 11.40(11), pages 495-497, especially footnote 52.

p. 257 [24 L.Ed. at p. 833]), and when the litigation was nevertheless instituted, the defendant had changed his mark to eliminate any infringement. (96 U.S. at p. 250 [24 L.Ed. at p. 830].) Obviously, therefore, injunction was not the real issue in the case. The Supreme Court reversed the award as to damages because of the laches of the plaintiff but held that the injunction was proper. Very little by way of explanation of this distinction was presented, and if the reference to affirming the injunction was not technically dictum, it was an essentially passing observation on a matter of no substantial controversy.

Even if this analysis of *McLean* v. *Fleming* is correct, however, it merely moves the subject forward 10 years to *Menendez* v. *Holt,* 128 U.S. 514 [32 L.Ed. 526, 9 S.Ct. 143]. The *Menendez* case differs from the *McLean* case in two important respects: (a) the injunction issue was directly involved in the *Menendez* case, and (b) the opinion therein contained substantial explanation. The Supreme Court was asked to reverse its position in *McLean* v. *Fleming* and refused to do so. The language of the opinion, however, needs to be carefully considered in light of the ambiguities earlier noted with respect to the words laches and estoppel. Chief Justice Fuller said: "[S]o far as the act is in progress and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise." (128 U.S. at p. 524 [32 L.Ed. at p. 529].) It seems correct to interpret this language to mean that if there is only delay (delay alone, without any additional equity or estoppel because of resulting prejudice to the defendant), then the remedy of damages may be affected but not the remedy of injunction; to bar an injunction there must be present the elements of an estoppel "in respect to" such delay.

It is easy to understand why the *Menendez* opinion emphasizes the differences between laches as a defense to a prayer for damages and laches as a defense to a prayer for an injunction. Proving damages in infringement cases is notoriously difficult, and delay in bringing the question to court can increase those difficulties substantially. The Restatement of Torts has commented upon the frequent impossibility of satisfactorily measuring the plaintiff's harm or the defendant's profits in such a case, or of tracing the causal connection between them and the defendant's conduct; the conclusion reached is that it may be unjust or inexpedient to compel the defendant to pay damages or to account for his profits, even though an injunction is allowed. (3 Rest., Torts, pp. 540-541, Introductory Note to ch. 35; see Annot. 14 A.L.R.Fed. 342.)

In one respect, however, the expectations of the *Menendez* court have not been borne out by the near-century of litigation that has followed. The court predicted that in this type of injunction case, laches will only rarely justify an estoppel, but the laches defense has not turned out to be so rare after all. Beginning as early as 1893, a number of cases have held that the plaintiff's delay so prejudiced the defendant that an injunction should be denied. (See *Prince's Metallic Paint Co.* v. *Prince Manuf'g Co.* (3d Cir.) 57 F. 938, 944; *Richardson* v. *D. M. Osborne & Co.* (C.C.D.N.Y.) 82 F. 95, 97, affd. 93 F. 828; *Pflugh* v. *Eagle White Lead Co.* (3d Cir.) 185 F. 769, 772-773; *Valvoline Oil Co.* v. *Havoline Oil Co.* (D.C.S.D.N.Y.) 211 F. 189, 194-195.) In some of these decisions the *McLean* and *Menendez* cases have been expressly distinguished. For example, in *Prince's Metallic Paint Co.* v. *Prince Manuf'g Co., supra,* the court said: "Now, it is true that, where the plaintiff's title to a trade-mark is clear, mere delay, unaccompanied by anything else, will not ordinarily bar a suit for injunction against a naked infringer. Fullwood v. Fullwood, 9 Ch. Div. 176; McLean v. Fleming, 96 U.S. 245; Menendez v. Holt, 128 U.S. 514, 9 Sup.Ct. Rep. 143. But we are dealing with no such case." (57 F. at p. 944.) And in *Pflugh* v. *Eagle White Lead Co., supra,* the court said: "But those were cases where, as said in Menendez v. Holt, supra, there was nothing 'in the nature of an estoppel, nothing which rendered it inequitable to arrest at this stage any further invasion of complainant's rights.' In this case there is." (185 F. at pp. 772-773.)

In addition to these cases exemplifying the "rare" exception mentioned in the *Menendez* opinion, there have been cases recognizing other exceptions and qualifications. One of the most frequently noted limitations has been the rule that laches may be a defense against an injunction after all if the defendant's infringement has been innocent. (*Saxlehner* v. *Eisner & Mendelson, Co.,* 179 U.S. 19, 38-39 [45 L.Ed. 60, 75-76, 21 S.Ct. 7].) In one decision following this rule, for example, the United States Supreme Court, on the ground of laches, refused an injunction against a group of black masons who had copied the terminology of a group of white masons (the Shriners); it was noted that the imitation was "in the nature of emulation rather than false pretense" and that there was no evidence of a fraudulent intent. *Ancient Egyptian Arabic Order N.M.S.* v. *Michaux,* 279 U.S. 737, 747 [73 L.Ed. 931, 937, 49 S.Ct. 485.][3] See also *La Republique Francaise* v. *Saratoga Vichy Spring Co.,* 191 U.S. 427, 439 [48 L.Ed. 247, 253, 24 S.Ct. 145]; *Anheuser-Busch* v. *Du Bois Brewing Co.*

---

[3]It was assumed, without deciding, that the rules relating to the use of trademarks and trade names were applicable. (279 U.S. at p. 746 [73 L.Ed. at p. 936].)

(3d Cir.) 175 F.2d 370 (dissenting judge found there was fraud); *Old Lexington Club D. Co. v. Kentucky D. & W. Co.* (D.N.J.) 234 F. 464, 469 affd. and opinion adopted (3d Cir.) 247 F. 1005 (the defendant did more business than the plaintiff); *Avon Shoe Co. v. David Crystal, Inc.* (2d Cir.) 279 F.2d 607, 613; Annot. 76 A.L.R.2d 1396, 1403-1405; Annot. 14 A.L.R. Fed. 342, 355; but see *Dwinell Wright Co. v. Whitehouse Milk Co.* (2d Cir.) 132 F.2d 822, 824-825.)

Another limitation has related to the degree of competition involved; injunctions have been denied for laches where the defendant's product does not directly compete with the plaintiff's. (See *Dwinell Wright Co. v. Whitehouse Milk Co., supra,* 132 F.2d 822, 825; *Polaroid Corporation v. Polarad Electronics Corp.* (2d Cir.) 287 F.2d 492, 497-498.) Especially where the field is one into which the plaintiff would naturally be expected to expand, the plaintiff must act promptly. (*Stardust, Inc. v.* Weiss (S.D.N.Y.) 79 F.Supp. 274, 278; *Emerson Electric Mfg. Co. v. Emerson Radio & P. Co.* (2d Cir.) 105 F.2d 908, 911.) And where there is no present or likely future competition between the products of the plaintiff and those of the defendant, the injunction issue may turn on whether or not the defendant's merchandise is of high quality and unlikely to damage the plaintiff's reputation. (*Avon Shoe Co. v. David Crystal, Inc., supra* 279 F.2d 607, 614.)

Some cases have recognized territorial limitations; a defendant may be enjoined as to one location even though not as to another. (*Thomas J. Carroll & Son Co. v. M'lvaine & Baldwin* (2d Cir.) 183 F. 22, 28; *Old Lexington Club D. Co. v. Kentucky D. & W. Co., supra,* 234 F. 464, 470, affd. and opinion adopted 247 F. 1005; *Weatherford v. Eytchison,* 90 Cal.App.2d 379, 383, 386 [202 P.2d 1040].)

Even the circumstance that only a preliminary injunction is at issue has influenced a decision in favor of permitting the laches defense. (*Le Cordon Bleu v. BPC Publishing Limited* (S.D.N.Y.) 327 F.Supp. 267, 272.)

One of the most difficult exceptions to pin down is laches "amounting to" or "approaching" acquiescence or consent. Mere delay on the part of the plaintiff does not necessarily indicate an actual willingness that the defendant may continue his invasion of the plaintiff's rights, but some of the cases have viewed the plaintiff's long-continued silence or inaction as amounting to acquiescence and on that theory have sanctioned laches as a bar to an injunction. (See *Ambrosia Chocolate Co. v. Ambrosia Cake Bakery* (4th Cir.) 165 F.2d 693, 695; *Dwinell Wright Co. v. Whitehouse*

*Milk Co., supra,* 132 F.2d 822, 825; 30A C.J.S., Equity, § 117 p. 64.) Other cases have suggested that even acquiescence is not enough. (See *Family Record Plan, Inc.* v. *Mitchell,* 172 Cal.App.2d 235, 246 [342 P.2d 10]: "acquiescence, or laches, must be accompanied by circumstances amounting to an abandonment. . . .")

Finally, in at least one case the defense of laches was recognized, and an injunction refused, conditionally; the injunction was denied provided the defendant used the word "artificial" in advertising its product. *(City of Carlsbad* v. *Schultz* (C.C.S.D.N.Y.) 78 F. 469, 472.)

Despite all these qualifications and exceptions, however, the *McLean* and *Menendez* cases have been viewed in some decisions as establishing a general rule against the defense of laches in infringement cases involving injunctive relief. We note that in some of these decisions the language has been no more than dictum, either because injunctive relief was not involved *(Gillons* v. *Shell Co. of California* (9th Cir.) 86 F.2d 600, 601 (only damages were requested); *Golden West Brewing Co.* v. *Milonas & Sons, Inc.* (9th Cir.) 104 F.2d 880, 881 (only the plaintiff appealed)) or because there was no finding of laches in the first place *(Schmidt* v. *Brieg,* 100 Cal. 672, 681-682 [35 P. 623]; *Tomsky* v. *Clark,* 73 Cal.App. 412, 420 [238 P. 950]; *Reid, Murdoch & Co.* v. *H. P. Coffee Co.* (8th Cir.) 48 F.2d 817; *Phillips* v. *The Governor & Co., etc.* (9th Cir.) 79 F.2d 971, 975; *Golden Door, Inc.* v. *Odisho* (N.D. Cal.) 437 F.Supp. 956, 968); that in quite a number of cases the courts have spoken of "mere" laches or delay, or of delay "without more," without indicating whether there has been any prejudicial effect upon the defendant *(Family Record Plan, Inc., supra,* 172 Cal.App.2d 235, 246, and cases cited; cf. *DeBurgh* v. *DeBurgh,* 39 Cal.2d 858, 863, 871 [250 P.2d 598]; *Cluett, Peabody & Co.* v. *Hartogensis* (C.C.P.A.) 41 F.2d 94, 98; see McCarthy, Trademarks and Unfair Competition, p. 382; 4 Callman, The Law of Unfair Competition, Trademarks and Monopolies (3d ed.) § 87.3(b)(3), p. 144; Calimafde, Trademarks and Unfair Competition, § 15.02, p. 682); and that in still other cases the courts have said only that laches will not "ordinarily" or "generally" bar an injunction. *(H. Moffat Co.* v. *Koftinow,* 104 Cal.App.2d 560, 566 [232 P.2d 15]; *Phillips* v. *The Governor & Co., etc., supra,* 79 F.2d 971, 974; *Golden Door, Inc.* v. *Odisho, supra,* 437 F.Supp. 956, 968; see 74 Am.Jur.2d, Trademarks and Tradenames, § 159, pp. 812-813.) And yet there have been a few decisions which appear to stand for the proposition that injunctive relief will be granted in infringement cases even where there has been prejudicial delay on the part of the plaintiff. *(Aunt Jemina Mills Co.* v. *Rigney & Co.* (2d Cir.) 247 F. 407, 412;

*Middleby-Marshall Oven Co.* v. *Williams Oven Mfg. Co.* (2d Cir.) 12 F.2d 919, 921.)

In the face of this divergence of authority, plaintiff has placed special reliance upon two decisions rendered by federal courts in California.

In the first of these, *Brooks Bros.* v. *Brooks Clothing of California* (S.D. Cal.) 60 F.Supp. 442, affirmed and opinion adopted 158 F.2d 798, the court's language suggests that only delay as such may have been involved; after finding how and when the plaintiff learned of the infringement, the court said: "Such knowledge means duty to act. And its failure to act until 1944 . . . amounts to laches." (60 F.Supp. at p. 458.) There was no reference to any resulting prejudice to the defendant. Moreover, the court seems not to have been familiar with the major qualification placed upon the *McLean-Menendez* approach by *Saxlehner* v. *Eisner & Mendelson Co., supra,* 179 U.S. 19, 38-39 [45 L.Ed. 60, 75-76] that is, the qualification that laches may be a defense to an injunction if the defendant's infringement has not been fraudulent. In the *Brooks Bros.* case, the court found that the defendant's adoption of the Brooks name had been innocent (60 F.Supp. at pp. 454-455), but the court nevertheless rejected laches as a defense against the requested injunction. Finally, the *Brooks Bros.* opinion contains no real discussion of the laches issue as it relates to injunctive relief, and most of the cases cited in the opinion (60 F.Supp. at p. 458, fn. 35) are distinguishable for reasons already noted herein. We cannot say that the *Brooks Bros.* case contributes anything to a clarification of the problem.

The other federal case emphasized by plaintiff, *Stork Restaurant* v. *Sahati* (9th Cir.) 166 F.2d 348, does not constitute a true holding on the issue, for the court found that there had been no laches. (166 F.2d at p. 363.) The court quoted the *McLean* case, but without any clarifying explanation and even without stating whether the rule which was announced involved laches consisting of delay alone or laches causing prejudice to the adverse party.

The *Stork Restaurant* case purports to find and follow a "California view" on the subject (166 F.2d at p. 363) and quotes from *Hall* v. *Holstrom,* 106 Cal.App. 563, 570, 571 [289 P. 668]. But in the *Hall* case, the court did not find the plaintiff guilty of laches and, in any event, stated only that the doctrine of laches is not "ordinarily" a defense to an injunction against infringement. Moreover, the quoted portion of the

opinion strongly suggests that the word laches was used in the sense of mere delay. (106 Cal.App. at p. 570.) The opinion then quotes a legal textbook to the effect that laches or delay must be accompanied by circumstances "amounting to an abandonment *or an estoppel*" before it constitutes any defense. (106 Cal.App. at p. 571. Italics added.)

The *Stork Restaurant* opinion also cites *Schmidt* v. *Brieg, supra,* 100 Cal. 672, 681-682. In that case the defense of laches was raised by the defendants for the first time on appeal, and the court found that "the contention is not supported by the admitted facts," that is, that there had been no laches. Moreover, the case cannot be said to support the argument that laches should be treated differently in damages and injunction cases, for the damages portion of the judgment was upheld.

Our own research has failed to reveal a California rule. In *Tomsky* v. *Clark, supra,* 73 Cal.App. 412, 420, the court found no laches. (It will be recalled that this is one of the cases which uses the term estoppel by laches.) The opinion in *H. Moffat Co.* v. *Koftinow, supra,* 104 Cal.App.2d 560, 566, quotes *Hall* v. *Holstrom, supra,* 106 Cal.App. at page 570, to the effect that the laches defense is not "ordinarily" applicable against an injunction in an infringement case, and that where the public has not been misled or deceived to its damage by the delay, "mere" laches will not furnish a defense. As in the *Hall* case, the opinion also quotes a textbook to the effect that there must be circumstances "amounting to an abandonment or an estoppel" before laches or delay will constitute any defense. The court then finds there was no abandonment, but nothing further is said about any possible estoppel.

As it happens, we have found one direct holding on this issue by a California court, and it appears to be contrary to plaintiff's version of the *McLean-Menendez* rule. In *Jewish Publications, Inc.* v. *Gordon,* 91 Cal.App.2d 376, 378 [205 P.2d 65, 206 P.2d 61], the court noted that the first B'nai B'rith lodge in California was established in San Francisco in 1855, that the order had been active throughout the state ever since, that the defendant Southern California Council of B'nai B'rith Lodges was an affiliate, and that the plaintiff, an unaffilliated private corporation, began publishing the B'nai B'rith Messenger in 1898. The court declared that "fraternal organizations may not permit individuals to publish papers or magazines over a period of years, using the name of the organization, and then deny such individuals the use of the name. This is for the reason that there can be built up a vested right to the use of a name in such cases."

The court refused to prohibit continued publication by the plaintiff. No case authority for this holding was cited, and we hesitate to suggest that a "California view" was there established; for all that appears, the court was not aware of the *McLean* or *Menendez* decisions or of the many other cases which have considered this problem.

We have concluded that in the *McLean* and *Menendez* decisions the United States Supreme Court did not intend to establish a rule for injunctive relief in infringement cases which is contrary to the equity principles traditionally governing the laches defense. It appears rather that the court sought to articulate the result of the application of those principles to the special facts there under consideration.[4] The many exceptions, qualifications and subtleties of interpretation which have appeared in later cases convince us that, with changes in the facts, the balance of equities moves toward one party or the other, and there are inevitable changes in the results. Unfortunately, a number of courts and legal writers have stated that an injunction in infringement cases will not "ordinarily" be denied on account of laches, and in a few decisions these loose generalizations have led to an erroneous refusal to consider the laches defense at all, even where the plaintiff's delay has resulted in prejudice to the defendant. We are satisfied that the better view is that in all such cases the court should weigh the competing equities which bear on the issue of delay and should then grant or deny injunctive relief depending on the overall balance of those equities. (*Jewish Publications, Inc.* v. *Gordon, supra,* 91 Cal.App.2d 376, 378; *Phlugh* v. *Eagle White Lead Co., supra,* 185 F. 769, 772-773: *Polaroid Corp.* v. *Polarad Electronics Corp., supra,* 287 F.2d 492, 497-498; cf. *Gutknecht* v. *Paul,* 83 Cal.App.2d 356, 357 [188 P.2d 764]; *California State Automobile Assn. Inter-Ins. Bureau* v. *Cohen,* 44 Cal.App.3d 387, 392-393 [118 Cal.Rptr. 890]; see 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity §§ 14-16, pp. 5239-5242; 30 Cal.Jur.3d, Equity, §§ 37, 39, 41, pp. 479, 482, 485-486; 87 C.J.S., Trade-marks, Trade-names, and Unfair Competition, § 183, p. 524; 30A C.J.S. Equity §§ 112, 118, pp. 19, 65; 74 Am.Jur.2d, Trademarks and Tradenames, § 80, p. 751; 27 Am.Jur.2d, Equity, § 152, p. 687.)[5]

---

[4]An explanation for the language of the *McLean* and *Menendez* opinions was offered by Judge Learned Hand in *Emerson Electric Mfg. Co.* v. *Emerson Radio & Phonograph Corp., supra,* 105 F.2d 908, 911. He observed that those cases involved or were thought to involve, trademark infringement rather than only a conflict in trade names, and that in trademark cases actual fraud is "almost inevitably" present.

[5]Earlier (fn. 1, *ante*), we observed that there is no need in this opinion to pursue the difference between trademarks and unfair competition. In one respect, however, the effect

The Restatement of Torts, promulgated in 1934, is in accord with this view. Section 751, which is applicable to trademark infringement and unfair competition cases, provides:

"§ 751. Unreasonable Delay.

"One who knows or should know of the conduct of another which subjects the other to liability under the rules stated in §§ 711-743, and thereafter unreasonably delays the bringing of an action is barred, wholly or partially, from relief to which he would otherwise be entitled."

It will be noted that the Restatement rule on the subject is not based on delay alone, but rather on unreasonable delay. Moreover, comment d. to this section ("Extent of disability") observes that the criterion is not simply the amount of time that has elapsed but whether, in the situation which has resulted as a consequence of the unreasonable delay "it would be inequitable to grant the relief sought. The delay may, in some cases, result in such an accommodation of public understanding and such an identification of the defendant's product and trade-mark, that it would be wholly inequitable to interfere at all with the defendant's use of his mark." (Rest., Torts, § 751, p. 667.)

A subsidiary question relates to delay during the litigation, as claimed by defendants. We agree with them that the authorities cited by plaintiff (*McCord Co.* v. *Plotnick*, 108 Cal.App.2d 392, 396 [239 P.2d 32], and *Hall* v. *Holstrom, supra*, 106 Cal.App. 563, 570) do not support plaintiff's contention that the laches defense is applicable only to delay prior to the filing of the complaint. On the contrary, it has been held that delay during litigation may constitute such laches as would bar the granting of relief. (*Jones* v. *City of Los Angeles*, 120 Cal.App.2d 858, 860-861 [262 P.2d 37].) And this is so even though the defendant has not taken

---

of that difference is worth noting. The rules for federal *registration* of trademarks have developed historically in a special way because they are governed by federal statutes. On the basis of the particular wording of those statutes, it was held at one time that the defense of laches was not available in trademark registration litigation. (*Cluett, Peabody & Co.* v. *Hartogensis, supra*, 41 F.2d 94, 96-98.) But Congress thereafter enacted amendatory legislation, and the defense of laches is now recognized. (*Lightnin Chemical Co.* v. *Royal Home Products* (C.C.P.A.) 197 F.2d 668, 670; *Willson* v. *Graphol Products Co.* (C.C.P.A.) 188 F.2d 498, 502; see 1 Seidel et al., Trademark Law and Practice, § 24.07, p. 652.) In two ways the cases discussing the new legislation support the position taken herein. First, they indicate that general equity principles would have allowed laches as a defense in registration cases had it not been for the earlier statutes. Second, they note the Congressional policy determination in approving the laches defense in the amendatory legislation. (See *Wilson* v. *Graphol Products Co., Inc., supra*, 188 F.2d at p. 502.)

advantage of the relief provided by section 583 of the Code of Civil Procedure for failure to bring the case to trial within two years. (120 Cal.App.2d at p. 862; see also 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial § 121, pp. 2787-2788; Annot. 167 A.L.R. 1058, 1062; Annot. 43 A.L.R. 921.)

Since the trial court ordered the laches evidence stricken, the judgment must be reversed. Defendants conceded at the argument, however, that all evidence on the subject had been introduced before that order was made, and it will therefore not be necessary to have a new trial. ■ In considering that evidence, for the purpose of determining whether plaintiff has been guilty of inappropriate delay and, if so, whether it has so prejudiced defendants as to make it inequitable to grant injunctive relief, the trial court must weigh a number of factors. These will include the length of any such delay, excuses for delay, defendant's knowledge, in advance, that plaintiff was using its trade name, any actual fraud in defendants' conduct, plaintiff's acquiescence or consent, or the appearance thereof, the extent of competition between plaintiff and defendants, any prejudice to, or reliance by, defendants, possible changes in conditions during delay, the effect of delay upon the availability of evidence, alternative solutions, the effect of a granting of injunctive relief upon defendants, the effect of a denial upon plaintiff, and the impact of the parties' conduct, and of the ultimate judgment to be rendered, upon the public interest. (See McCarthy, Trademarks and Unfair Competition, pp. 386-388; 27 Am.Jur.2d, Equity, § 162, p. 701; 30 Cal.Jur.3d, Equity, §§ 41-48, pp. 485-501; cf. Annot. 14 A.L.R.Fed. 342, 355-389.)

The effect upon the public may be an especially important consideration. In the ordinary infringement case, the public interest is typically affected where, in spite of the plaintiff's delay, an injunction is nevertheless appropriate because the public would otherwise purchase the defendant's product believing it is the product of the plaintiff.[6] The court of customs and patent appeals has observed that protection of the public from confusion can be "the dominant consideration." (*Swank, Inc.* v. *Ravel Perfume Corp.* (C.C.P.A.) 438 F.2d 622, 624.) In the present case, the evidence suggests that there has been considerable public confusion because of the similarity of names; the impact upon the public where hospital services are involved may well be more important than in the ordinary commercial competition case. (See *People* v. *Department of*

---

[6]Of course, in a given case, the public may come to identify a name as describing the product of the defendant rather than the product of the plaintiff. (See, for example, *Old Lexington Club D. Co.* v. *Kentucky D. Co., supra,* 234 F. 464, 467.)

*Housing & Community Dev.,* 45 Cal.App.3d 185, 196 [119 Cal.Rptr. 266]; *People* ex rel. *Mosk* v. *National Research Co. of Cal.,* 201 Cal.App.2d 765, 771 [20 Cal.Rptr. 516]; *Academy of Motion Picture, etc.* v. *Benson,* 15 Cal.2d 685, 691 [104 P.2d 650]; 68 Harv.L.Rev. 814, 885-893.) The trial court should give appropriate weight to all evidence bearing on the public interest.

## II

Defendants' argument that there is no evidence that a secondary meaning has attached to plaintiff's name is based principally on the claim that no "fanciful" meaning of the name was shown, as required by certain cases involving unfair competition in the use of geographical names. It is true that the word fanciful is used in *Beverly Hills Hotel* v. *Hilton Hotels,* 134 Cal.App.2d 345, 350 [285 P.2d 1012], but the word is not there used in the sense of whimsical or imaginary or unreal. Rather, the plaintiff must show that its geographical name has taken on, in the public mind, something more than a strict geographical meaning, so that when the name is used a member of the public would not think primarily of *any* hospital in Tustin, but of plaintiff's hospital in particular. Such a secondary meaning is fanciful in the sense that it is not the original meaning of the geographical name, but a meaning which has been created by plaintiff and developed by plaintiff's use. In *H. Moffat Co.* v. *Koftinow, supra,* 104 Cal.App.2d 560, the plaintiff used for its beef the brand name Manteca, which was the name of a city in the area where the parties did business. The court found that the public understanding that Manteca beef was the plaintiff's beef constituted a fanciful meaning of the word Manteca. (104 Cal.App.2d at p. 564.)

Defendants also contend that the evidence does not show that this secondary meaning attached before defendants began use of their new name. Taken as a whole, we believe that the extensive evidence on the confusion of names sufficiently establishes a chronology in which plaintiff was the first to become associated in the public mind with the name Tustin Community Hospital, and that this was at a time when defendants were identified in the public mind with their former hospital facilities under the name Santa Ana Community Hospital.

Contrary to the contention of defendants, finding 9 adequately covers the subject of secondary meaning. It reads: "During the period of its operation, TUSTIN COMMUNITY HOSPITAL has become known, respected

and patronized by members of the relevant market community to which it offers its services and has achieved public identification and recognition associating its name with its building, services, business, and personnel." The words "public identification and recognition associating its name" refer to a secondary meaning of Tustin Community Hospital.

### III

Defendants contend that neither the evidence nor the findings support a conclusion that the similarity of names is the cause of the confusion between the two hospitals.

So far as the evidence is concerned, we have reviewed the testimony presented in plaintiff's brief as well as other portions of the record and we are satisfied that there is substantial evidence concerning the cause of the confusion.

Regarding the findings, defendants rely on the wording of finding 10 that witnesses "attributed" their error in identification to the confusion between the two names. Apparently defendants are suggesting that, for a correct finding, the wording should have been that the court itself attributed the error to that confusion in the names. The language of the finding cannot be so narrowly read; we are satisfied that the court meant that it had accepted this testimony concerning causation. In addition, finding 13 states that this confusion will continue "so long as the defendants designate their hospital by the name Santa Ana-Tustin Community Hospital"; the only possible meaning of this language is that said name designation is the cause of the confusion.

As plaintiff suggests, this is a case like *Academy of Motion Picture, etc. v. Benson, supra,* 15 Cal.2d 685, 691, in which the defendants adopted a name "which *prima facie* is broad enough in its concept to be mistaken by the ordinary unsuspecting person for the institution created by the incorporators of the plaintiff." That case was decided on a demurrer to the amended complaint, the court reversing the trial court's determination that no cause of action was stated. In our own case, this prima facie potential for confusion in the two names is confirmed by the formidable evidence of confusion which was presented in the testimony.

### IV

Defendants' final argument is that there is no evidence that a name change would cure the problem. Plaintiff, however, has pointed to

substantial evidence that a change of name is the best solution, rather than the educational program proposed by defendants. Defendants are simply arguing the weight of the evidence, and it is elementary that this court will not reverse a judgment on that ground. Defendants themselves admit that at least one witness gave testimony that a change is the correct solution; their efforts to disparage her qualifications as an expert go to the question of her credibility, not to any legal reason upon which we could instruct the trial court to disbelieve her. Defendants' description of their own witnesses as the "real" experts and their characterization of the testimony they presented as "overwhelming" are likewise irrelevant to the scope of review of this court when factual questions are involved.

Defendants' reliance upon *North Country Community Hospital* v. *North Shore Hosp.,* 128 N.Y.S.2d 168, is misplaced. That decision was issued by the trial judge in the case, not by an appellate court, and of course it was proper for him to determine factual questions. The opinion makes it clear that the decision was reached "under the circumstances of this case," and in fact the court expressly stated that if there were "the creation of material confusion in the public mind as to the identity of the two hospitals, the result might be otherwise." (128 N.Y.S.2d at p. 170.) The decision was affirmed by the Appellate Division of the New York Supreme Court and also by the Court of Appeals (283 App.Div. 1074 [131 N.Y.S.2d 900] and 307 N.Y. 887 [123 N.E.2d 87]); at both levels the affirmance was without opinion, except that in the appellate division there was a dissenting opinion in which the potential for confusion was said to be "obvious."

V

■ On its cross-appeal, plaintiff urges that the injunction should not only prohibit use of the name Santa Ana-Tustin Community Hospital but also use of any other confusingly similar name. As earlier noted, plaintiff did not pray for this additional relief in its complaint, but it did request it in the proposed judgment which it submitted to the trial court.

The only case cited in support of the cross-appeal is *People* ex rel. *Mosk* v. *National Research Co. of Cal., supra,* 201 Cal.App.2d 765. In our view it constitutes authority contrary to plaintiff's contention; although a broadly worded injunction was affirmed, the point made in the appellate opinion was that there was no showing of an abuse of the trial court's discretion. (201 Cal.App.2d at p. 779.) Nor has any abuse of discretion

been demonstrated here, notwithstanding the fact that we might approve the additional relief now requested if the trial court had ordered it.

Moreover, plaintiff has failed to show any real advantage to be gained from the additional prohibition. The law of unfair competition admonishes defendants not to adopt another confusingly similar name, and if they should nevertheless do so, plaintiff could file another action. It is not clear that proving a violation of the injunctive provision now sought would be any easier.

The judgment is reversed, with directions to the trial court to vacate its order striking the evidence relating to laches, to make findings of fact and conclusions of law on that issue, and to make such modification of the judgment, if any, as is indicated by those findings and conclusions. Otherwise it is affirmed.

Tamura, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied March 27, 1979, and the petition of the defendants and appellants for a hearing by the Supreme Court was denied April 26, 1979.